## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | |
|---|---|
| JEFFERY CARLOS HALE, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. _____ |
| CNX GAS COMPANY, LLC; TORCH OIL & GAS COMPANY; and JOHN DOES A-Z, | **CLASS ACTION COMPLAINT** |
| Defendants. | **Trial By Jury Requested** |

Plaintiff, on behalf of himself and all other similarly situated, states as follows for his

Complaint against Defendants:

### INTRODUCTION

1.      This case is brought on behalf of certain owners of gas interests in Buchanan,

Russell and Tazewell Counties, Virginia ("the Class").  Plaintiff and the Class Members are the

owners of gas estates/interests in tracts that are included in coalbed methane gas drilling units

operated by CNX Gas Company, LLC, and have been identified by CNX in filings with the

Virginia Gas and Oil Board ("Board") as having claims to the ownership of coalbed methane gas

("CBM") that conflict with the CBM ownership claims that ostensibly arise from coal ownership in

the tracts.[1]

2.      The Coal Owner Defendants listed in paragraphs 13-15, below, are the owners of

purported CBM claims that arise from coal ownership in tracts that are included in CBM drilling

units operated by CNX.  Those entities or their predecessors in interest were identified by CNX in

---

[1]  As used herein, "CNX" means CNX Gas Company, LLC and its predecessors or predecessors-in-interest, including Pocahontas Gas Partnership.

filings with the Board as having claims to the ownership of CBM that conflict with the claims of the owners of the gas estates/interests in the tracts, including Plaintiff and the Class Members.

3.     For years, CNX, as the operator of CBM wells/units located in the Subject Virginia Counties, has produced and sold substantial quantities of CBM that are attributable to Plaintiff's and the Class Members' gas ownership interests, and has never properly accounted to Plaintiff and the Class Members for same.

4.     CNX has taken possession of and sold CBM attributable to Plaintiff's and the Class Members' gas interests by taking undue and/or unlawful advantage of certain provisions of the Virginia Gas and Oil Act, VA. CODE ANN. § 45.1-361-1, *et seq*. ("the Gas Act"), that permit the production and sale of CBM in the face of "conflicting claims" of CBM ownership.  CNX repeatedly asserted that there were conflicting CBM ownership claims as between gas interest owners (the Class) on the one hand, and coal interest owners (the Coal Owner Defendants) on the other hand.  CNX instituted proceedings before the Board that resulted in the entry of orders that pooled all interests or estates in CBM drilling units, appointed CNX as operator of the CBM units, and -- critical to this lawsuit -- provided that Plaintiff and the Class Members were "deemed, subject to a final legal determination of ownership," to have leased their CBM interests in the units to CNX, the CBM Unit operator. *See* VA. CODE ANN. §45.1-361.22(6).

5.     CNX thereupon proceeded to produce and sell CBM attributable to Plaintiff's and the Class Members' interests, and was obligated, under §45.1-361.22 of the Gas Act, to place all proceeds attributable to Plaintiff's and the Class Members' interests into escrow, pending judicial resolution of the "conflicting claims" of CBM ownership.  Such monies have never been paid to Plaintiff and the Class Members.

6.      CNX deprived Plaintiff and the Class Members of CBM production and/or production revenues attributable to Plaintiff's and the Class Members' interests by claiming that the Coal Owner Defendants own the CBM as a result of interests that arise from coal ownership.

7.      CNX's claims and course of conduct are unfounded and contrary to the law.  The Virginia Supreme Court held six years ago that CBM "is a distinct mineral estate" from coal, and that landowners retain the rights to CBM located on their property when they convey or lease coal rights.  *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 238, 267 Va. 549, 556 (2004).  A new state law codifies th*e Ratliff* rule.  VA. CODE ANN. § 45.1-361.21:1:  "A conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas."  Therefore, controlling statutory and common law in Virginia holds that Plaintiff and the Class Members own the CBM that is produced from the lands in which they own gas interests, and that the Coal Owner Defendants do not own the CBM.

8.      The "deemed leases" imposed on the Class Members were conditionally imposed, in that those "leases" are, in accordance with VA. CODE ANN. § 45.1-361.22(6), "subject to a final legal determination of ownership."  Plaintiff respectfully requests that this Court make that ownership determination.

9.      Plaintiff's primary goal in this case is to obtain from this Court the "final legal determination of ownership" that the statute requires, which -- under the plain language of the Gas Act -- would nullify Plaintiff's and Class Members' deemed leases.  The ownership determination would have substantial benefits to Plaintiff and the Class Members, including entitling them to finally receive the many years' worth of their money that has been held in escrow or retained by CNX as a result of ownership conflicts that do not exist.

10.     On behalf of the Class, Plaintiff seeks a judgment to establish – among other

things – that:

    a.     Plaintiff and the Class Members -- not Defendants -- are the owners of the CBM that is attributable/allocated to those CBM Unit tracts as to which CNX has asserted there are conflicting claims of CBM ownership between Plaintiff and Class Members (as gas interest owners) on the one hand, and the Coal Owner Defendants (as coal interest owners) on the other hand;

    b.     CNX, as the CBM Unit operator, must account to Plaintiff and the Class Members as unleased mineral owners, e.g., on an eight-eighths (8/8ths) basis, net of operational expenses, and do so as to both past production and future production;

    c.     All proceeds attributable to Plaintiff's and the Class Members' CBM interests must be released from escrow to Plaintiff and the Class Members;

    d.     CNX must account for the methodology it used to calculate the escrowed proceeds, must prove that it sold the CBM at the highest price obtainable and otherwise calculated the proceeds (8/8ths, net of operational expenses) properly, and must pay over to Plaintiff and the Class Members any proceeds CNX calculated improperly or failed to deposit into escrow; and

    e.     If the "deemed lease" provisions of the Gas Act are not interpreted as written but are instead interpreted to confine and limit Plaintiff's and the Class Members' rights and remedies to the recovery of past and/or future proceeds based only on a 1/8th net proceeds "deemed lease" royalty interest, then those statutory provisions, as so interpreted and applied, must be held to be an unconstitutional taking and transfer of Plaintiff's and the Class Members' valuable CBM rights, interests and properties to CNX, for private purposes, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 11 of the Virginia Constitution; or alternatively, the deemed lease royalty provisions ("1/8th net proceeds" royalty rate and paltry cash bonuses of $1.00 per acre and $5.00 per acre) established by the Gas Act and/or by the provisions of CBM Unit pooling orders issued by the Board, constitute an unconstitutional taking without

adequate or just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and in violation of Article I, Section 11 of the Virginia Constitution; and -- in either event -- the deemed leases CNX seeks to impose must be declared void and unenforceable and CNX must account to Plaintiff and the Class Members as unleased mineral owners and must disgorge and pay over to Plaintiff and the Class Members an amount of money equal to eight-eighths (8/8ths) of the value of all CBM attributable to Plaintiff's and the Class Members' interests that has been (or will be) produced and sold by CNX, together with interest thereon and any monetary or economic benefits, advantages or profits derived therefrom by CNX.

## PARTIES

### Plaintiff

11.     Plaintiff, Jeffery Carlos Hale, is an adult resident citizen of North Carolina.

Plaintiff is the owner of lands and gas interests, including CBM, in Buchanan County, Virginia.

### CNX

12.     Defendant CNX Gas Company, LLC is a limited liability company organized

under the laws of the Commonwealth of Virginia and has its principal office at 1000 Consol

Energy Drive, Canonsburg, Pennsylvania 15317-6506.  The sole member of CNX Gas Company,

LLC, is CNX Gas Corporation.  CNX Gas Corporation is an out-of-state corporation organized

under the laws of the State of Delaware and has its principal office at 1000 Consol Energy Drive,

Canonsburg, Pennsylvania.   For the purposes of subject matter jurisdiction under 28 U.S.C.

§1332(a), the citizenship of CNX Gas Company, LLC is the citizenship of its sole member, CNX

Gas Corporation; therefore, for the purposes of 28 U.S.C. §1332(a), CNX Gas Company, LLC is a

citizen of either Delaware (where CNX Gas Corporation was incorporated) or of Pennsylvania

(where CNX Gas Corporation has its principal place of business).  Alternatively, for the purposes of

subject matter jurisdiction under 28 U.S.C. §1332(d), CNX is a citizen of Virginia, under whose laws it was organized and where it has its principal place of business.

## Coal Owner Defendants

13.    Defendant Torch Oil & Gas Company ("Torch") is an out-of-state company organized under the laws of the State of Delaware and has its principal office at 670 Dona Ana Road SW, Deming, New Mexico 88030.

14.    Torch and CNX are the owners of purported CBM interests that allegedly arise from coal ownership in tracts included in certain CBM Units operated by CNX.  These ostensible CBM interests conflict with the CBM interests of the owners of gas estates/interests in the tracts, including Plaintiff.  Torch and CNX acquired their purported CBM interests as follows.  The Hugh Macrae Land Trust ("HMLT") owns the coal underlying various lands in Buchanan County, Virginia, including Plaintiff's lands.  On September 3, 1991, HMLT entered into a Coalseam Gas Lease with Pocahontas Gas Partnership – succeeded by CNX – under which HMLT, as lessor, leased to Pocahontas (now CNX), as lessee, all of HMLT's rights in and to all coalseam gas underlying its coal lands in Buchanan County, Virginia.  Subsequently, on December 29, 1997, HMLT assigned to Torch Energy Advisors Inc. all of HMLT's rights to receive the royalties payable by CNX to HMLT under the Coalseam Gas Lease.  On September 1, 2008, Torch Energy Advisors Inc. assigned to Torch Oil & Gas Company (Defendant in this case) all of Torch Energy Advisors Inc.'s title and interest in and to its rights to the same royalties.  Therefore, HMLT has no existing claim to the CBM production and proceeds that are the subject of this case; instead, Torch and CNX own all of the purported CBM interests, if any, that arise from HMLT's coal ownership.

15.    The "John Does A-Z" defendants are the additional persons and entities who have been identified (or whose predecessor(s) in interest were identified) by CNX in its filings with the Board as coal estate/coal interest owners that (allegedly) have "conflicting claims" with absent Class Member gas owners in respect to the ownership of CBM produced from CBM Units operated by CNX; provided, however, that the John Doe defendants exclude any person or entity that is a citizen of the State of North Carolina. The complete identity of the John Doe defendants is currently unknown by Plaintiff, but the identity of those defendants is known by CNX, and Plaintiff will name them as specific parties defendant upon Plaintiff's receipt of the necessary information from CNX.

## JURISDICTION

16.    Plaintiff, individually and on behalf of the Class, seeks the issuance of a declaratory judgment pursuant to 28 U.S.C. § 2201(a). Plaintiff, individually and on behalf of the Class, also seeks injunctive relief and/or damages as a result of the matters described hereinafter.

17.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the named plaintiff, on the one hand, and the defendants, on the other hand, are citizens of different States, and as between the named parties, the matter in controversy exceeds $75,000, exclusive of interest and costs. Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and because one or more members of the Class are citizens of a State different from, *inter alia*, Defendant CNX Gas Company, LLC. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question) because this action arises under the Constitution of the United States. This Court has supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. §1367.

18.     This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants conduct business in the Commonwealth of Virginia, including, *inter alia*, producing gas in the Commonwealth of Virginia, and entering into agreements for the sale of property and property rights located in the Commonwealth of Virginia.

19.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the acts and transactions complained of herein occurred in this District, and pursuant to 28 U.S.C. §1391(a)(3) because Defendants are subject to personal jurisdiction at the time this action is commenced.

## DEFINITIONS

20.     The following definitions apply to this Complaint:

a.      The term "including" means "including, without limitation."

b.      "Coal Owner Defendants" means CNX, Torch, and the "John Does A-Z" defendants.

c.      "CNX" means CNX Gas Company, LLC, and its predecessors or predecessors-in-interest, including Pocahontas Gas Partnership.

d.      "Board" means the Virginia Gas and Oil Board.

e.      "CBM" means coalbed methane gas.

f.      "CBM Unit" is a CBM drilling unit operated by CNX and established by a pooling order issued by the Board.

g.      "Subject Virginia Counties" means Buchanan, Russell and Tazewell Counties, Virginia, and all other Virginia Counties in which CNX operates (or has operated) CBM well/units.

## FACTUAL ALLEGATIONS

### Background

21.     This case concerns the ownership of CBM produced by CNX from CBM Units located in the Subject Virginia Counties.

22.     Various persons and entities, including the Coal Owner Defendants or their predecessors in interest, hold the right to extract coal through coal mining operations in the Subject Virginia Counties.  The coal owners mine and produce coal -- or hold the right to mine and produce coal -- based upon their ownership of the coal and/or their leasehold rights to the coal.

23.     CBM is a natural gas that resides in coal seams.  Coal companies have historically ventilated or otherwise removed CBM from their coal mines as a safety measure, and discharged the CBM into the atmosphere.  However, during the 1970's, technological advances made the commercial production and sale of CBM feasible, and CBM wells began to be drilled.

24.     In 1990, the Virginia General Assembly enacted the Virginia Gas and Oil Act, VA. CODE ANN. §§ 45.1 - 361.1, *et seq*. (the "Gas Act").  When the Gas Act was enacted, there was uncertainty in Virginia about the legal question of whether CBM was owned by the owners of the gas estate/gas interests (e.g., landowners) or by coal estate/coal interest owners (e.g., coal companies).  The Gas Act facilitated the drilling and production of CBM, without waiting for the CBM ownership issue to be judicially decided, by making it relatively easy for a company to force-pool and drill for CBM in a given area (a "unit"). However, to protect the interests of the true CBM owners, the Gas Act required the operator of the drilled well -- who also is a "participating operator" as defined in §45.1-361.1 of the Gas Act -- to place all proceeds from the sale of CBM (less reasonable costs of production) attributable to "conflicting" CBM ownership interests into escrow until "a final decision of a court of competent jurisdiction

adjudicating the ownership of coalbed methane gas as between [the conflicting claimants]." *See* VA. CODE ANN. §45.1-361.22(4) and (5).

25.    CNX began producing and selling CBM from the Subject Virginia Counties in the 1990's.  CNX's CBM operations are extensive.  At the close of 2009, CNX operated approximately 3,200 CBM wells in the Subject Virginia Counties, resulting in the production of approximately 78,000,000 of Mcf of CBM that was marketed and sold by CNX in 2009.

26.    The CBM Units operated by CNX were established by pooling orders issued by the  Board under §45.1-361.22 of the Gas Act.  Each pooling order describes a defined area of surface acreage; designates that area as a drilling unit ("CBM Unit") on which a well can be located, drilled and operated for the recovery of CBM; "pools" all of the gas estates/interests in the CBM Unit; and appoints CNX as the operator of the CBM Unit.

27.    In most (if not all) instances, a CBM Unit is comprised of two or more separately owned tracts.  Under the Gas Act and the Board's pooling orders, the CBM produced by CNX from a CBM Unit is allocated among the separate tracts on a proportionate acreage basis, *i.e.*, the portion of CBM production allocated to a tract is in the same proportion which the tract's acreage bears to the total acreage in the CBM Unit. (For example, if a CBM Unit is 100 acres and is comprised of one tract (Tract 1) containing 60 acres, another tract (Tract 2) containing 30 acres, and another tract (Tract 3) containing 10 acres, then the CBM produced from the CBM Unit's well(s) would be allocated among the tracts as follows: Tract 1 – 60%; Tract 2 – 30%; and Tract 3 – 10%.)  The CBM production allocated to a particular tract is shared among the tract's gas owners on a proportionate ownership basis.

28.    Coalbed methane gas, CBM, is defined by the Gas Act as "occluded natural gas produced from coalbeds and rock strata associated therewith."  VA. CODE ANN. §45.1-361.1.  As

noted above, when the Gas Act was passed there was some uncertainty in Virginia about whether CBM allocated to a CBM Unit tract was owned by (a) the persons and entities owning the gas estate/ gas interests in that tract ("gas owners"), or (b) the persons and entities owning the coal estate/ coal interests in that tract ("coal owners").  (The Virginia Supreme Court addressed and answered the question on March 5, 2004.  *Harrison-Wyatt v. Ratliff*, 593 S.E.2d 234 (Va. 2004) (title to CBM does not pass to coal owner along with the coal).)

29.     Beginning in the 1990's, when making an application to the Board for a CBM Unit to be established, CNX -- as the proposed operator -- undertook to (and was obligated under §45.1-361.22 of the Gas Act to) identify those tracts in which there were conflicting claims to the ownership of CBM, and to provide lists/schedules that identified the conflicting claimants/potential owners.

30.     When it submitted its CBM Unit applications and made subsequent filings as the Board-appointed CBM Unit operator, CNX consistently advised and represented to the Board that conflicting claims to the ownership of CBM existed for each of those tracts in which one person or entity owned the gas estate/gas interests ("gas owner") and a different person or entity owned the coal estate/coal interests ("coal owner").  The conflicting claim allegedly arose from the question of whether the CBM allocable to that tract was owned by the gas owner(s) or by the coal owner(s).

31.     CNX provided the Board with lists/schedules that identified the "conflicting claimants," including the name of each gas owner and the name of each coal owner. The pooling orders issued by the Board for CNX-operated CBM Units consistently adopted (apparently "rubber-stamped") CNX's assertions of "conflicting claims" of CBM ownership.

32.     CNX undertook, as the operator of the CBM Units, to produce CBM from the CBM Units; and CNX undertook, as the operator and/or as a participating working interest owner, to take possession of and sell the CBM it produced from the CBM Units.  The CBM sales proceeds attributable to "conflicting interests," including all proceeds attributable to Plaintiff's and the Class Members' gas interests, were (or were supposed to have been, but have not been) deposited by CNX into a Board-established escrow account per the provisions of VA. CODE ANN. §45.1-361.22, which provides that "[t]he coalbed methane gas well operator shall deposit into the escrow account one-eighth of all proceeds attributable to the conflicting interests plus all proceeds in excess of ongoing operational expenses as provided for under §45.1-361.21 and the order of the Board attributable to a participating or nonparticipating operator."

33.     To release the escrowed monies, §45.1-361.22(5) of the Gas Act provides that "[t]he Board shall order payment of principal and accrued interest, less escrow account fees, from the escrow account to conflicting claimants only after (i) a final decision of a court of competent jurisdiction adjudicating the ownership of coalbed methane gas as between them or (ii) an agreement among all claimants owning conflicting estates in the tract in question or any undivided interest therein."

## Determination of Ownership

34.     Plaintiff and the Class Members are the persons and entities who have been identified by CNX in its CBM Unit applications and other Board filings as the owners of the gas estates/gas interests in a CBM Unit tract, but whose ownership of the CBM allocated to that tract has been further identified by CNX as being in conflict with the persons and entities who own CBM claims that arise from coal ownership in the tract.  The Coal Owner Defendants are the persons and entities who have been identified (or whose predecessor(s) in interest were

identified) by CNX in its CBM Unit applications and other Board filings as the owners of the coal estates/interests in the relevant CBM Unit tracts, but whose coal ownership ostensibly -- according to CNX -- gives them an ownership claim to the CBM in those tracts that caused a conflict between them and Plaintiff and the Class Members, who own the gas estates/interests in the tracts. The CBM production proceeds attributable to Plaintiff's and the Class Members' gas interests that are -- according to CNX -- in conflict with Defendants' coal interests, have never been released from escrow or otherwise paid over to Plaintiff and the Class Members.

35.     Through this action, Plaintiff requests, on behalf of himself and the Class, that the Court enter a judgment declaring, as between the "conflicting claimants" identified by CNX, that as a matter of law the CBM allocated to the subject CBM Unit tracts is owned by Plaintiff and the Class Members (the gas interest owners) and is not owned by the Coal Owner Defendants (the coal interest owners).  Such a determination is a straightforward legal issue, given the Virginia Supreme Court's decision in *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 238, 267 Va. 549, 556 (2004) (coalbed methane gas "is a distinct mineral estate" from coal, and landowners (gas owners) retain the rights to CBM when they convey or lease coal rights), and the very recent addition of §45.1-361.21:1 to the Gas Act which provides that: "A conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas."

36.     The CBM Unit proceedings instituted by CNX resulted in the entry of Board orders providing that Plaintiff and the Class Members (the true owners of the CBM) were "deemed" to have leased their CBM interests in the CBM Units to CNX.  *See* VA. CODE ANN. §45.1-361.22(6) ("Any person who does not make an election under the pooling order shall be deemed, subject to a final legal determination of ownership, to have leased his gas or oil interest to the coalbed methane gas operator as the pooling order may provide.")

37.     Such "deemed leases" were conditionally imposed, in that those "leases" are, in accordance with VA. CODE ANN. §45.1-361.22(6), "subject to a final legal determination of ownership."

38.     The Board does not (as CNX and the Board agree) have the authority to make "a final legal determination of ownership."

39.     Plaintiff respectfully asks this Court to apply *Ratliff* and §45.1-361.21:1 and make the ownership determination required by the statute in favor of Plaintiff and the Class Members.

40.     Such a "final legal determination of ownership" of the CBM in favor of Plaintiff and the Class Members will nullify the deemed leases conditionally imposed upon them, voiding the deemed leases *ab initio*, and Plaintiff requests the entry of a declaratory judgment to that effect.

41.     Plaintiff further requests that this Court enter a judgment declaring that Plaintiff and the Class Members are unleased mineral owners and that CNX must account to Plaintiff and the Class Members as such.  Accordingly, Plaintiff and the Class Members are, as to the past production of CBM by CNX, entitled to receive from the Board's escrow account and/or from CNX directly, all (8/8ths) proceeds attributable to their interests (net of proper operating costs) and the Court should direct CNX and/or the Coal Owner Defendants to instruct and otherwise authorize the Board to release such proceeds from escrow, plus all interest accrued (or which could or should have accrued) thereon, and pay such monies over to Plaintiff and the Class Members.   In addition, Plaintiff and the Class Members, as unleased mineral owners, are entitled, as to future production, to elect to either (i) take "in-kind" and sell all (8/8ths) of the CBM that is attributable to their unleased CBM interests, or (ii) have CNX, as the CBM Unit operator, to (properly) sell all (8/8ths) of the CBM that is attributable to their unleased CBM

interests and remit the proceeds for same to Plaintiff and the Class Members on a monthly basis (with arrangements to be made, in either event, for Plaintiff and the Class Members to bear their proportionate share of actual, direct and reasonable costs as unleased mineral owners).

### CNX's Escrow Account Obligations

42.     With regard to CNX's escrow payment obligations, CNX has asserted that it is only obligated to deposit "deemed lease" royalty payments ("1/8th net proceeds") into the escrow account.

43.     As a result, 7/8ths of the CBM sales proceeds attributable to Plaintiff's and the Class Members' "conflicting interests" have been retained by CNX for its own use and benefit, with no accounting or payment for same having been made to Plaintiff and the Class Members.

44.     CNX was obligated, however, as a "participating owner" under the Gas Act holding leasehold rights attributable to "conflicting interests," to deposit such 7/8ths proceeds (net of operating costs) into the escrow account. *See* VA. CODE ANN. §45.1-361.22(4).

45.     Under §45.1-361.22(6) of the Gas Act and the pooling orders issued by the Board, Plaintiff and the Class Members were "deemed" (subject to a final legal determination of ownership) to have leased their gas interests to CNX. CNX thereupon purportedly became a "gas owner" as that phrase is defined in the Gas Act.  *See* Section 45.1-361.1 ("gas or oil owner" defined as "any person who owns, leases, has an interest in, or who has the right to explore for, drill, or operate a gas or oil well as principal or as lessee." (emphasis added)).

46.     As to the leasehold interests CNX purportedly obtained via its deemed leases, CNX opted to become a "participating operator," which is a term defined by the Gas Act to mean "a gas or oil owner who elects to bear a share of the risks and costs of drilling, completing, equipping, operating, plugging and abandoning a well on a drilling unit and to receive a share of

production from the well equal to the proportion which the acreage he owns or holds under lease bears to the total acreage of the drilling unit." VA. CODE ANN. §45.1-361.1 (definition of "participating operator").

47.    CNX took possession of and sold the CBM Unit production attributable to the leasehold interests it purportedly obtained from the Class Members under its deemed leases.

48.    CNX  was supposed to pay all of its sales proceeds, net of operating expenses, into the Board's escrow account in accordance with §45.1-361.22(4) of the Gas Act, which provides: "The coalbed methane gas well operator shall deposit into the escrow account one-eighth of all proceeds attributable to the conflicting interests **plus** all proceeds in excess of ongoing operational expenses as provided for under §45.1-361.21 and the order of the Board attributable to a participating or non-participating operator." (Emphasis added.)  Because CNX's leasehold interests were attributable to "conflicting interests" (i.e., CNX derived its interests from gas owners whose claims of ownership were -- according to CNX -- in conflict with the CBM ownership claims of coal owners), CNX was not free to retain any proceeds for its own use and benefit, but was instead required by the Gas Act to place all such proceeds (net of operating expenses) into escrow so that those proceeds would be available to the true owners (here, the Class Members) upon a final legal determination of ownership in their favor.

49.    As written, the Gas Act's "deemed lease" and escrow provisions work together to (a) clarify the legal authority of the operator to produce and sell the CBM attributable to "conflicting claims" until the CBM ownership claims could be resolved, and (b) preserve and protect for the true owners all of the proceeds attributable to the conflicting interests.

50.    To the extent CNX has deposited into escrow any proceeds attributable to Plaintiff's and the Class Members' interests (8/8ths proceeds minus operating costs), Plaintiff

and the Class Members are entitled to receive a judgment from the Court directing CNX to instruct and otherwise authorize the Board to release such escrowed proceeds to Plaintiff and the Class Members, including all escrow account interest accrued thereon.

51.    To the extent, however, that CNX failed to properly pay such proceeds into escrow (which Plaintiff alleges is likely), CNX should be required, via the entry of a judgment, to pay to Plaintiff and the Class Members an amount of money equal to the total amount of proceeds CNX should have deposited, but failed to deposit, plus prejudgment and equitable interest thereon, and plus the value of any monetary or other economic advantages, profits, and benefits, including attendant tax credits, that CNX realized through its receipt, retention and use of said proceeds.

52.    The one-eighth payments that CNX deposited into escrow for the deemed leases were themselves calculated improperly.  The full extent of CNX's acts and omissions in regard to its payments (or non-payments) of "deemed lease" royalties is not currently known, and can only be determined adequately through an accounting and investigation of CNX's books, records, and practices, including, without limitation, disclosure of detailed information relating to the handling and marketing of CBM produced by CNX and all other matters relating to CNX's calculation and payment (or nonpayment) of "deemed lease" royalty payments into escrow.

53.    For example, Plaintiff alleges upon information and belief that there are certain instances in which CNX has wholly failed to deposit Plaintiff's and the Class Members' "deemed lease" royalties  into escrow and has, instead, retained all (8/8ths) of the proceeds.

54.    Similarly, Plaintiff alleges upon information and belief that there are certain instances where the "deemed lease" royalties paid by CNX for Plaintiff and other Class Members into escrow were calculated improperly and were insufficient.  For example, in marketing the

CBM it produced, CNX was obligated, by virtue of its undertakings and/or as the CBM Unit operator, to act as a reasonably prudent operator and to market and sell the CBM at the highest price obtainable.  However, in calculating and depositing its "deemed lease" royalty payments into escrow, CNX has, upon information and belief, improperly used gas prices that were less than the highest price obtainable, including prices from the sale of gas by CNX to affiliates on a non-arm's-length basis.

55.     Plaintiff and the Class Members demand and are entitled to receive a full and accurate disclosure and an accounting of all such matters from which the full extent of CNX's wrongful acts and omissions and Plaintiff's and the Class Members' resulting damages may be revealed.

56.     Plaintiff and the Class Members are entitled to recover from CNX all amounts that are shown to be owed by CNX as the result of such accounting, including prejudgment and equitable interest thereon at the maximum lawful rate.

57.     As set forth above, Plaintiff and the Class Members are entitled to receive all (8/8ths) of the proceeds attributable to their interests and produced by CNX in the past (through either the release of proceeds from escrow or from CNX, directly, if CNX failed to deposit the proceeds into escrow); and  are entitled, as to future production, to either take in kind and sell all (8/8ths) of the CBM that is attributable to their unleased CBM interests or have CNX, as the CBM Unit operator, to (properly) sell the CBM for their account.

58.     CNX may assert that, regardless of a final legal determination of CBM ownership in favor of Plaintiff and the Class Members, Plaintiff and the Class Members are bound by "deemed leases," and that their only remedies are to receive "deemed lease" royalties deposited into escrow for past production, and to receive "deemed lease" royalty payments directly for

future production. Such a result would be contrary to the proper interpretation of the Gas Act, as written, and would, if applied, cause the "deemed lease" provisions of the Gas Act to be unconstitutional, as applied, on the grounds set forth below.

### The Unconstitutional Deemed Leases

59.     If the Court applies the plain language of the Gas Act as Plaintiff suggests above, then the Gas Act is being applied constitutionally, and the Court need not reach the unconstitutionality allegations outlined below.

60.     However, if the Court were to agree with CNX's interpretation of the Gas Act, including, *inter alia*, the allowance of permanent deemed leases in favor of a unit operator , then the deemed lease provisions of the Gas Act (§45.1-361.22(6)) constitute a taking of Plaintiff's property rights for private purposes under State authority, in violation of the Fifth Amendment to the United States Constitution, and in violation of Article I, Section 11, of the Virginia Constitution; or, alternatively, constitute a taking of Plaintiff's property rights under State authority without adequate or just compensation, in violation of the Fifth Amendment to the United States Constitution and in violation of Article I, Section 11 of the Virginia Constitution.

61.     Plaintiff does not challenge the authority of the Commonwealth of Virginia to enact statutes containing reasonable and necessary provisions for the compulsory pooling of interests in a single pool, including a CBM Unit. Such a statute must, however, protect the "correlative rights" of each gas owner having an interest in the unit, which rights have been defined by the Gas Act to mean "the right of each gas or oil owner having an interest in a single pool to have a fair and reasonable opportunity to obtain and produce his just and equitable share of production of the gas or oil in such pool or its equivalent without being required to drill

unnecessary wells or incur other unnecessary expenses to recover or receive the gas or oil or its equivalent." VA. CODE ANN. §45.1-361.1 (definition of "correlative rights").

62.    Under the Gas Act and CBM Unit pooling orders issued by the Board, an unleased mineral interest owner whose interests are force-pooled may elect either to (a) sell or lease his gas ownership to a participating operator, (b) enter into a voluntary agreement to share in the operation of the well at a rate of payment mutually agreed to by the gas owner and the gas operator authorized to drill the well, or (c) share in the operation of the well as a non-participating operator on a carried basis after the proceeds allocable to his share equal 200% of the share of such costs allocable to his interests. *See* VA. CODE ANN. §45.1-361.21(c)(7).

63.    Section 45.1-361.22 of the Gas Act contains additional provisions applying specifically to the pooling of interests for CBM Units and provides: "Any person who does not make an election under the pooling order shall be deemed, subject to a final legal determination of ownership, to have leased his gas or oil interests to the coalbed methane gas well operator as the pooling order may provide." VA. CODE ANN. §45.1-361.22(6).

64.    The pooling orders entered by the Board for CBM Units operated by CNX provide that Plaintiff and the Class Members were subject to a "deemed lease" of their CBM interests to CNX which provided for "royalties" on a "1/8th net proceeds" basis, with net proceeds being comprised of actual proceeds received by CNX from the sale of the CBM less costs incurred downstream of the wellhead, including, but not limited to, gathering, compression, treating, transportation and marketing costs. (Such "royalties" were not paid to Plaintiff and the Class Members but were instead deposited (or should have been deposited) into an escrow account and are being held by the Board pending judicial resolution of the alleged "conflicting claims" of CBM ownership.)

65.     As interpreted and sought to be applied by CNX, the Gas Act's "deemed lease" provisions in §45.1-361.22(6) and corresponding provisions in the Board's pooling orders, unconstitutionally deprive Plaintiff and the Class Members, unleased mineral owners, of their property rights and interests.

66.      Specifically, where an unleased mineral owner does not choose to sell or lease its rights and interests or to participate on some basis in the operations, the "deemed lease" provisions are automatically invoked to effect a transfer of the property rights and interests of the unleased mineral owners (Plaintiff and the Class Members) to another private party (CNX).

67.     The unleased mineral owner is, thus, divested of its CBM ownership interests, which are transferred to the operator, and is left with only a 1/8th net proceeds royalty interest.

68.      One of the attributes of mineral ownership is the "executive right," which is the right of a gas owner to lease his interests to a third party under lease bonus, royalty rate, and other terms and conditions acceptable to the gas owner, in his sole discretion. The Board's establishment of a de facto standard 1/8th net proceeds royalty rate and meager lease bonuses of $1.00 per acre and $5.00 per acre, has eliminated the ability of unleased mineral owners in Virginia, including Plaintiff and the Class Members, to negotiate a lease with the CBM Unit operator or third parties on terms acceptable to the unleased mineral owners.

69.     Instead, the statutory "options" available under Virginia's law present Plaintiff and the Class Members with the proverbial Hobson's Choice.  If they attempt to procure a negotiated lease at all, operators in Virginia, including CNX, offer unleased mineral owners a "take it or leave it" proposition, offering no more than the standard "deemed lease" royalty rate of "1/8th net proceeds."

70.     If the mineral owner declines, CNX simply employs the "deemed lease" provision of Virginia's statutory scheme to procure the mineral owner's rights and interests for the 1/8th net proceeds royalty rate and $1.00/$5.00 per acre bonus.

71.     Moreover, when presenting an unleased mineral owner with his or her (so-called) "election options," CNX and other CBM Unit operators have routinely engaged in practices intended and designed to induce or force unleased mineral owners into "deemed leases" and procure "deemed leases" for the operators improperly.  For example, CNX has failed to undertake due diligence to locate unleased mineral owners and give direct notice to unleased mineral owners, including Plaintiff, otherwise failed to give adequate notice to unleased mineral owners, including Plaintiff, and routinely failed to disclose pertinent data and information, overstated well drilling, completion and operating costs, and underestimated anticipated recoverable CBM reserves, including to Plaintiff, so that unleased mineral owners, including Plaintiff and the Class Members (who are usually unsophisticated and inexperienced landowners lacking sufficient knowledge or information to understand the highly technical engineering, property administration, and other complex aspects of gas well operations and the complex cost and revenue accounting practices relating thereto), have no meaningful knowledge or understanding of  the proposed operations or of the consequences of an election or failure to elect.

72.     Additionally, even if an unleased mineral owner were inclined to participate, the statutory scheme is designed to enable and empower CNX and other operators to discourage unleased mineral owners from so doing, because the operator can claim unilaterally and improperly (as CNX has done here) that unleased mineral owners have "conflicting claims" of CBM ownership with coal owners and thereby cause all of the proceeds attributable to those so-

called "conflicting interests" to be held by the Board in escrow pending a final legal determination of ownership.

73.     The "deemed lease" provisions of the Gas Act -- as CNX asserts they must be applied -- do not relate to nor advance any legitimate State interest or the purposes, goals and objectives of the pooling laws.

74.     To be constitutional, a compulsory or forced pooling statute should only -- and need only -- "pool"  the unleased mineral owners' rights and interests in the Unit and provide that if an unleased mineral owner does not elect to participate, then he will be treated as a non-participating ("carried") working interest owner.

75.     The "pooled" unleased mineral owner would thereby retain all (8/8ths) of his or her interests share in the production of CBM well as a non-operating working interest owner, and bear his or her proportionate share of operating costs on a non-participating ("carried") basis.

76.     The Gas Act's  "deemed lease" provisions, however, go too far; it is not necessary for the pooling of an unleased mineral owners' interests, is not consistent with the constitutionally permissible purposes of the pooling law, is contrary to the commonly accepted practice throughout the United States, and effects a taking of private property from the unleased mineral owner  and the transfer of that private property to another private person, for the benefit of that other private person (the operator), in violation of the United States and Virginia Constitutions.

77.     In addition to being an unconstitutional taking for private purposes (which is unconstitutional regardless of the amount of compensation paid for the taking), the deemed lease provisions are unconstitutional because they are premised on compensation that is inadequate and unjust.

78.     CNX's CBM wells are extremely low-risk (no-risk) operations, given that the wells are drilled at relatively shallow depths into coal seams that are known to contain substantial quantities of commercially recoverable CBM. In such circumstances, the deemed lease royalty terms (1/8th net proceeds royalty and paltry cash bonuses of $1.00 per acre and $5.00 per acre) are materially and substantially less than the royalty terms and provisions that could be obtained by unleased mineral owners through the negotiation of a gas lease in a free, open, and competitive market, and do not represent fair market value for the Plaintiff's and the Class Members' property interests.

79.     Accordingly, the "deemed leases" constitute a taking of Plaintiff's and Class Members' property rights without adequate and just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and in violation of Article I, Section 11 of the Virginia Constitution.

80.     If they have the effect asserted by CNX, the "deemed leases" are unconstitutional, and they are, therefore, unenforceable and void *ab initio*. Accordingly, Plaintiff and the Class Members are entitled, as unleased mineral owners, to receive from the Board's escrow account and/or from CNX directly an amount of money equal to eight-eighths (8/8ths) of the value of all the CBM attributable to Plaintiff's and the Class Members' unleased mineral interests that has been produced and sold by CNX in the past; and are entitled to be treated as unleased mineral owners as to any future production.

81.     CNX requested that the Board implement the constitutionally deficient "deemed leases," and CNX thereby engaged in willful, wanton, outrageous, bad faith, anti-competitive, and otherwise improper conduct.  CNX should, therefore, be required, as to its past production,

to make such 8/8ths payments to Plaintiff and the Class Members on a gross proceeds basis, without any deductions for a proportionate share of drilling, completion, or operating costs.

## PUNITIVE DAMAGES

82.    The acts and omissions of CNX as set forth hereinabove were willful and wanton and in utter disregard of the rights of Plaintiff and the Class Members, or were done with reckless disregard for their rights, thus entitling Plaintiff and the Class Members to punitive damages against CNX in an amount to be determined by the jury.

## SPECIAL MASTER

83.    Plaintiff requests that the Court consider the appointment of a master under Rule 53, FED. R. CIV. P., to assist the Court in the resolution of the accounting issues due to be resolved through this action, with all such costs for same, including the master's compensation, to be paid by CNX.

## CLASS ACTION ALLEGATIONS

84.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the Class, defined as follows:

> Each person and entity who has been identified by CNX as an "unleased" owner of the gas estate or gas interests in a tract included in a coalbed methane gas unit operated by CNX in any of the Subject Virginia Counties, and whose ownership of the coalbed methane gas attributable to that tract has been further identified by CNX as being in conflict with a person(s) or entity(ies) owning the coal estate or coal interests in the tract, according to filings made by CNX with the Virginia Gas and Oil Board and/or according to orders entered by the Virginia Gas and Oil Board pursuant to CNX's filings. The Class excludes (a) the Defendants, and (b) any person who serves as a judge in this civil action and his/her spouse.

85.    Plaintiff reserves the right to redefine the Class and/or establish subclasses as may be appropriate.

86.    The members of the Class are so numerous that joinder of all members is

impractical.  Disposition of the claims in this action will provide substantial benefits to both the parties and the Court.

87.    Although the precise number and identity of the Class Members can be ascertained from the books and records of Defendants, Plaintiff alleges, upon information and belief, that the Class exceeds 100 members.

88.    There are questions of law and/or fact common to the Class that predominate over any questions that affect only individual Class Members.  These questions include, but are not limited to, the following:

a.    Whether the Gas Act makes the existence of deemed leases created by CBM ownership conflicts under §45.1-361.22(6) subject to final legal determinations of CBM ownership;

b.    Whether as a matter of law Plaintiff and the Class Members own the CBM that is attributable to the CBM Unit tracts in which they own gas estates/gas interests;

c.    Whether as a matter of law a conveyance, reservation, or exception of coal does not include CBM;

d.    Whether CNX has committed an actionable trespass upon Plaintiff's and the Class Members' lands and/or gas interests;

e.    Whether CNX has converted Plaintiff's and the Class Members' CBM and/or revenues attributable thereto;

f.    Whether CNX has failed to account and/or properly account to Plaintiff and the Class Members for CBM and/or revenues attributable thereto;

g.    Whether CNX should prospectively account to Plaintiff and the Class Members as unleased mineral owners;

h.      Whether CNX's accounting methodology for the production of CBM from the Subject Virginia Counties, including its calculation of production proceeds attributable thereto and CNX's payment, underpayment and/or non-payment of proceeds into escrow, was the same for all Class Members;

i.      Whether CNX used the same methodology and underlying records to calculate all Class Members' escrow account payments;

j.      Whether CNX used for all Class Members the same gas prices (per MCF and/or per MMBtu) to calculate their escrow account payments on CBM produced by CNX, and the transactions upon which those gas prices were based;

k.      Whether the gas prices used by CNX to make royalty payments attributable to Plaintiff's and the Class Members' interests into escrow were less than the best gas prices obtainable for such CBM;

l.      Whether the "deemed lease" provisions of the Gas Act and/or the "deemed lease" provisions of the Board's pooling orders -- as interpreted and applied by CNX -- are an unconstitutional taking for private purposes;

m.      Whether the "deemed lease" royalty provisions ("1/8th net proceeds" royalty rate and $1.00 per acre and $5.00 per acre "cash bonuses"), as sought by CNX to be imposed on Plaintiff and the Class Members, are unconstitutional;

n.      Whether CNX has violated its duty to properly account to Plaintiff and the Class Members on CBM produced in the Subject Virginia Counties as a result of the acts and omissions described herein; and

o.      Whether punitive damages can and should be imposed on CNX by virtue of CNX's wrongful acts and omissions.

89.     CNX has acted on grounds that apply generally to Plaintiff and all Class Members, so that declaratory and injunctive relief is necessary and appropriate for the Class as a whole, consistent with Rule 23(b)(2) of the Federal Rules of Civil Procedure.

90.     The critical remedy that Plaintiff seeks -- a final legal determination of CBM ownership -- is primarily declaratory and injunctive. The monetary relief that Plaintiff seeks is secondary to, and flows from, the declaratory/injunctive request.

91.     The common pattern of conduct by Defendants (along with the common theories for redressing the misconduct) support the maintenance of this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

92.     Plaintiff and the Class Members share a well-defined community of interest; many common questions of law and fact are common to Plaintiff and all Class Members.

93.     Plaintiff's claims are typical of the claims of the Class, and Plaintiff has the same interests as the other members of the Class.

94.     Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

95.     Plaintiff is committed to prosecuting this action and has retained experienced and competent counsel.  Plaintiff's counsel are experienced in class actions, including actions that involve breaches of oil and gas leases, and underpayments of gas royalties.  Neither Plaintiff nor Plaintiff's counsel have any interests that might cause them not to vigorously pursue this action.

96.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, many members of the Class will find the litigation costs regarding their claims so prohibitive that they effectively would be unable to seek any redress at law.  Because of the size of the individual Class Members' claims, many could not

afford to seek legal redress or the relief requested for the wrongs set forth herein.  Absent a class

action, Defendants  will continue the improper and wrongful conduct herein described, the Class

Members will continue to be damaged by Defendants' wrongful conduct, and Defendants'

violations of the law will continue without remedy.

**COUNT I**

**DECLARATORY JUDGMENT**

97.     Plaintiff restates and incorporates herein by reference all of the allegations

contained in the above numbered paragraphs.

98.     Plaintiff requests that the Court issue a judgment pursuant to 28 U.S.C. §2201,

and declare that:

    a.      Plaintiff and the Class Members --not Defendants --are the owners of the CBM that is attributable/allocated to those CBM Unit tracts as to which CNX has asserted there are conflicting claims of CBM ownership as between Plaintiff and Class Members (as gas interest owners) on the one hand, and the Coal Owner Defendants (as coal interest owners) on the other hand;

    b.      CNX, as the CBM Unit operator, must account to Plaintiff and the Class Members as unleased mineral owners, e.g., on an eight-eighths (8/8ths) basis, net of operational expenses, and do so as to both past production and future production;

    c.      All proceeds attributable to Plaintiff's and the Class Members' CBM interests must be released from escrow to Plaintiff and the Class Members;

    d.      CNX must account for the methodology it used to calculate the escrowed proceeds, must prove that it sold the CBM at the highest price obtainable and otherwise calculated the proceeds (8/8ths, net of operational expenses) properly, and must pay over to Plaintiff and the Class Members any proceeds CNX calculated improperly or failed to deposit into escrow;

    e.      If the "deemed lease" provisions of the Gas Act are not

interpreted as written but are instead interpreted to confine and limit Plaintiff's and the Class Members' rights and remedies to the recovery of past and/or future proceeds based on only a 1/8th net proceeds "deemed lease" royalty interest, then those statutory provisions so interpreted and applied must be held to be an unconstitutional taking and transfer of Plaintiff's and the Class Members' valuable CBM rights, interests and properties to CNX for private purposes, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 11 of the Virginia Constitution; or, alternatively, the deemed lease royalty provisions ("1/8th net proceeds" royalty rate and paltry lease bonuses of $1.00 and $5.00 per acre) established by §45.1-361.22(6) of the Gas Act and/or by the provisions of pooling orders issued by the Board, constitute an unconstitutional taking without adequate or just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and in violation of Article I, Section 11 of the Virginia Constitution; and -- in either event -- the deemed leases CNX seeks to impose must be declared void and unenforceable and CNX must account to Plaintiff and the Class Members as unleased mineral owners and must disgorge and pay over to Plaintiff and the Class Members an amount of money equal to eight-eighths (8/8ths) of the value of all the CBM attributable to Plaintiff's and the Class Members' interests that has been (or will be) produced and sold by CNX, together with interest thereon and any monetary or economic benefits, advantages or profits derived therefrom by CNX.

## COUNT II

### TRESPASS

99.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

100.     Trespass is the unauthorized use of or entry onto another's property.  CNX, as the Board-appointed operator of the CBM Units, had the lawful authority to produce the CBM that was attributable to Plaintiff's and the Class Members' interests.  However, once the CBM was produced, CNX was obligated to deliver the CBM to the rightful owners.

101.    CNX exercised wrongful dominion and control over the CBM that was attributable to Plaintiff's and the Class Members' interests, and deprived Plaintiff and the Class Members of such CBM and/or production revenues by claiming that the Coal Owner Defendants own the CBM as a result of their coal ownership interests.

102.    CNX took possession of and sold CBM that was owned by and attributable to the interests of Plaintiff and the Class Members, and did so without receiving lawful authorization or permission from Plaintiff and the Class Members.

103.    Such actions by CNX constitute actionable trespass upon Plaintiff's and the Class Members' lands and/or gas ownership interests.  Such actions constitute willful, bad faith trespass as to, *inter alia*, such actions taken by CNX after March 5, 2004, when the Virginia Supreme Court issued its decision in *Ratliff*.

104.    Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT III

## CONVERSION

105.    Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

106.    CNX, as the Board-appointed operator of the CBM Units, had the lawful authority to produce the CBM that was attributable to Plaintiff's and the Class Members' interests. However, once the CBM was produced, CNX was obligated to either deliver all of the CBM in kind to Plaintiff and the Class Members, or properly sell the CBM on Plaintiff's and the Class Members' behalf and remit the proceeds for same to Plaintiff and the Class Members. CNX

failed to do this, and instead took wrongful possession of, sold and used the CBM for its own

account, and received and retained the resulting sales proceeds for its own account, use, and

benefit.

107.    CNX's conduct constitutes an unlawful conversion of the CBM production that is

attributable to the Plaintiff's and Class Members' ownership interests and/or sales proceeds

derived from the sale of such CBM production. Plaintiff and the Class Members are entitled to

receive from CNX an amount of money equal to the gross revenues received by CNX from the

sale of Plaintiff's and Class Members' CBM production, or the fair market value of such CBM

production, whichever is greater.

108.    Plaintiff and the Class Members have been damaged as a proximate result thereof

and are entitled to recover their actual damages from CNX, statutory, equitable or other

prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief

deemed appropriate by the Court.

<u>**COUNT IV**</u>

<u>**NEGLIGENCE: VOLUNTARY UNDERTAKING**</u>

109.    Plaintiff restates and incorporates herein by reference all of the allegations

contained in the above-numbered paragraphs.

110.    CNX voluntarily undertook to submit applications to the Board for the creation of

CBM Units and thereby also voluntarily undertook the tasks of identifying the persons and

entities owning an interest in the proposed units and identifying any conflicting CBM ownership

claims therein.  CNX recognized, or should have recognized, that the proper identification of

owners and ownership interests was necessary for the protection of those persons and entities

actually owning interests in the CBM that was going to be produced from the CBM Unit.  As a

matter of law, CNX's undertaking imposed upon CNX a duty to exercise reasonable care in the discharge of its undertaking.

111.    On March 5, 2004, the Virginia Supreme Court issued its ruling in *Ratliff* and thereby established that, as between the owner of the gas estate/gas interests, on the one hand, and the owner of the coal estate/coal interests, on the other hand, CBM is owned by the owner of the gas estate/gas interests.  After March 5, 2004, and notwithstanding the Supreme Court's decision in *Ratliff*, CNX continued to make applications to the Board for the establishment of CBM Units and in connection therewith failed to exercise reasonable care with regard to its identification of the persons and entities owning interests in the CBM.

112.    Among other things, CNX improperly ignored the holding of *Ratliff*; improperly asserted that conflicting CBM ownership claims existed between gas owners and coal owners; improperly procured the Board's entry of pooling orders which adopted (false) assertions of conflicting CBM ownership claims as between gas owners and coal owners; and improperly caused CBM sales proceeds owed to the true CBM owners -- the gas owners -- to be subjected to escrow, thereby depriving Plaintiff and the Class Members of the CBM production and/or production proceeds to which they were entitled.  Further, after the Virginia Supreme Court's March 5, 2004, opinion in *Ratliff*, CNX, as the operator of CBM Units established prior to March 5, 2004, should have filed, but failed to file, supplemental and corrected ownership schedules with the Board in regard to those CBM Units that had been established prior to March 5, 2004. CNX should have withdrawn its prior ownership schedules in which gas owners and coal owners had been categorized incorrectly as "conflicting claimants," and should have submitted amended schedules reflecting, consistent with *Ratliff*, that the gas owners --not the coal owners -- were the true CBM owners. CNX could and should have thereby caused escrowed proceeds attributable to

past production to be released to the gas owners, including Plaintiff and the Class Members, and/or caused proceeds attributable to future production to be paid to the gas owners, including Plaintiff and the Class Members, instead of being placed into escrow.

113.    Such acts and omissions constitute a failure by CNX to exercise reasonable care in the performance of its undertaking, and constitute actionable negligence. Further, CNX's acts and omissions in this regard constitute gross negligence and willful, wanton misconduct.

114.    Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

**COUNT V**

**NEGLIGENCE: DUTIES AS UNIT OPERATOR**

115.    Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

116.    CNX owed Plaintiff and the Class Members certain obligations resulting from duties that are implied and imposed by law on the operators of force-pooled units, including the duty to act as a reasonably prudent operator and the duty to market.

117.    The above-described conduct by CNX constitutes violations and breaches of CNX's duty to act as a reasonably prudent operator and CNX's duty to market.

118.    Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT VI

## BREACH OF FIDUCIARY DUTIES

119.    Plaintiff restates and incorporates herein by reference all of the allegations

contained in the above-numbered paragraphs.

120.    Fiduciary duties and responsibilities were owed by CNX to Plaintiff and the Class

Members by virtue of (a) CNX's status as the Board-appointed operator of CBM Units created

through compulsory/forced pooling; (b) CNX's control over and handling, as unit operator, of

CBM production and sales proceeds for the benefit of persons owning interests in the CBM

Units operated by CNX, including Plaintiff and the Class Members; and/or (c) CNX's

undertakings to act as agent and/or joint venturer for, or for the benefit of, other interest owners

in the CBM Units operated by CNX, including Plaintiff and the Class Members, in regard to the

production, marketing and sale of CBM produced from the CBM Units and in regard to the

accounting and revenue distribution functions related thereto.  By virtue of such fiduciary duties

and responsibilities, CNX had an affirmative duty to correctly identify the interest owners in the

CBM Unit; calculate and pay the true and correct amount of monies due to the interest owners,

including Plaintiff and the Class Members; account for all of the CBM produced and sold by

CNX; and fully and accurately report and disclose all material information relating to CNX's

calculation of its payments.

121.    CNX's acts and omissions as above-described constitute violations and breaches

of the fiduciary duties owed by CNX to Plaintiff and the Class Members.

122.    Plaintiff and the Class Members have been damaged as a proximate result thereof

and are entitled to recover their actual damages from CNX, statutory, equitable, or other

prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief

deemed appropriate by the Court.

## COUNT VII

## UNJUST ENRICHMENT

123.    Plaintiff restates and incorporates herein by reference all the allegations contained in the above-numbered paragraphs.

124.    Benefits attributable to Plaintiff's and the Class Members' CBM ownership interests, including CBM production volumes, sales proceeds, attendant tax credits, and other benefits, were conferred on CNX by Plaintiff and the Class Members. CNX knew of such benefits and should reasonably have expected to repay Plaintiff and the Class Members for same. CNX accepted and retained such benefits without paying Plaintiff and the Class Members for the value of the benefits, and accepted and retained such benefits under circumstances that render it inequitable for CNX to retain the benefits without paying Plaintiff and the Class Members for the value of same.

125.    Plaintiff and the Class Members are entitled to recover the value of the benefits attributable to Plaintiff's and the Class Members' ownership interests that were accepted and retained by CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands as follows on behalf of himself and the Class:

1.    That a class be certified by the Court as soon as practicable, and that this action proceed as a class action with Plaintiff serving as Class Representative for the Class and with counsel for Plaintiff serving as Class Counsel;

2.      That the Court enter a judgment declaring the respective rights and obligations of the parties as described and requested above;

3.      That the Court award injunctive relief requiring CNX to properly account to Plaintiff and the Class Members as described and requested above;

4.      That Plaintiff and the members of the Class recover full compensatory damages from Defendants in respect to the claims asserted against them, respectively, and that CNX disgorge and pay over to Plaintiff and the members of the Class all of CNX's ill-gotten gains as described and requested above;

5.      That Plaintiff and the members of the Class recover punitive damages against CNX as determined by a jury;

6.      That Plaintiff and the Class Members recover pre-judgment, post-judgment, and equitable interest on all amounts awarded hereunder;

7.      That Plaintiff and the Class Members recover reasonable attorneys' fees and costs of this action;

8.      That this Honorable Court grant Plaintiff and the Class Members all additional relief as may be just and proper and to which the Plaintiff and the members of the Class may be entitled; and

9.      That Plaintiff and the Class Members be given a trial by jury.

Respectfully submitted,

Dated:  September 23, 2010

JEFFERY CARLOS HALE

By:    /s/ Peter G. Glubiak                    .
Peter G. Glubiak (VSB 31271)
GLUBIAK LAW OFFICE
11165 West River Road
P.O. Box 144
Aylett, VA  23009
Telephone:  (804) 769-1616
Facsimile:   (804) 769-1897
glubiaklaw@aol.com

Jackson S. White, Jr. (VSB 03677)
The White Law Office
P. O. Box 286
185 Valley St NE
Abingdon, VA 24212
Telephone: (276) 619-3831
Facsimile: (866) 516-5655
jackwhite@whitelawoffice.com

Larry D. Moffett (*pro hac vice* to be submitted)
DANIEL COKER HORTON & BELL, P.A.
265 North Lamar Blvd., Suite R
P. O. Box 1396
Oxford, MS 38655
Telephone: (662) 232-8979
Facsimile:  (662) 232-8940
lmoffett@danielcoker.com

Don Barrett (*pro hac vice* to be submitted)
Brian Herrington (*pro hac vice* to be submitted)
Katherine B. Riley (*pro hac vice* to be submitted)
David M. McMullan, Jr. (*pro hac vice* to be submitted)
BARRETT LAW GROUP, P.A.
404 Court Square North
P.O. Drawer 927
Lexington, MS  39095
Telephone:  (662) 834-2488
Facsimile:   (662) 834-2628
dbarrett@barrettlawoffice.com
bherrington@barrettlawgroup.com
kbriley@barrettlawoffice.com
dmcmullan@barrettlawoffice.com

David S. Stellings (*pro hac vice* to be submitted)
Steven E. Fineman (*pro hac vice* to be submitted)
Jennifer Gross (*pro hac vice* to be submitted)
LIEFF, CABRASER, HEIMANN
   & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592
dstellings@lchb.com
sfineman@lchb.com
jgross@lchb.com

Elizabeth J. Cabraser (*pro hac vice* to be submitted)
Lieff Cabraser Heimann
   & Bernstein, LLP
275 Battery Street
San Francisco, CA 94111
Telephone:  (415) 956-1000
ecabraser@lchb.com

Elizabeth A. Alexander (*pro hac vice* to be submitted)
Lieff Cabraser Heimann
   & Bernstein, LLP
One Nashville Place
150 Fourth Avenue North
Suite 1650
Nashville, TN 37219
Telephone:  (615) 313-9000
Facsimile: (615) 313-9965
ealexander@lchb.com

Richard R. Barrett (*pro hac vice* to be submitted)
Law Offices of Richard R. Barrett, PLLC
1223 Jackson Avenue, Suite 203
Oxford, MS 38655
Telephone: (662) 307-7000
rrb@rrblawfirm.net

Charles F. Barrett (*pro hac vice* to be submitted)
Attorney at Law
6518 Highway 100, Suite 210
Nashville TN 37205
T: 615.515.3393
F: 615.515.3395
charles@cfbfirm.com