# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

|  |  |
|---|---|
| JEFFERY CARLOS HALE, on behalf of himself and all others similarly situated, | Case No. 1:10-cv-00059 |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| CNX GAS COMPANY, LLC, | **Trial By Jury Requested** |
| Defendant. | |

Plaintiff, on behalf of himself and all others similarly situated, states as follows for his First Amended Class Action Complaint against the Defendant, CNX Gas Company, LLC:

## INTRODUCTION

1.     This case is brought on behalf of certain owners of gas estate interests in Buchanan, Russell, and Tazewell Counties, Virginia ("the Class"). Plaintiff and the Class Members are the owners of gas estate interests in tracts that are included in coalbed methane gas drilling units operated by CNX Gas Company, LLC ("CNX"), and have been identified by CNX in filings with the Virginia Gas and Oil Board ("Board") as having claims to the ownership of coalbed methane gas ("CBM") via their ownership of gas estate interests, that conflict with the CBM ownership claims of persons identified by CNX as owning coal estate interests.

2.     For years, CNX, as the operator of CBM wells/units located in the Subject Virginia Counties, has produced and sold substantial quantities of CBM that are attributable to Plaintiff's and the Class Members' gas estate interests, but CNX has not paid CBM production proceeds to Plaintiff and the Class Members and has never properly accounted to Plaintiff and the Class Members for same.

3.      CNX has taken possession of and sold CBM attributable to Plaintiff's and the Class Members' gas estate interests by taking undue and/or unlawful advantage of certain provisions of the Virginia Gas and Oil Act, VA. CODE ANN. §45.1-361.1, *et seq.* ("the Gas Act"), that permit the production and sale of CBM in the face of "conflicting claims" of CBM ownership.  CNX repeatedly (always) asserted -- and continues to assert -- that there are conflicting CBM ownership claims as between gas estate interest owners (including Plaintiff and the Class Members) on the one hand, and persons identified by CNX as owning coal estate interests on the other hand.

4.      CNX instituted proceedings before the Board under §45.1-361.22 of the Gas Act that resulted in the entry of Board orders that force-pooled all interests or estates in CBM drilling units, appointed CNX as operator of the force-pooled CBM units ("CBM Units"), and -- critical to this lawsuit -- provided that Plaintiff and the Class Members were "deemed, subject to a final legal determination of ownership," to have leased their gas estate interests in the units to CNX, the CBM Unit operator. *See* VA. CODE ANN. §45.1-361.22(6). CNX thereupon proceeded to produce and sell CBM attributable to Plaintiff's and the Class Members' gas estate interests in the CBM Units, but, because of CNX's assertions of "conflicting claims," CNX was obligated, under §45.1-361.22 of the Gas Act, to place the proceeds attributable to Plaintiff's and the Class Members' gas estate interests into escrow, pending a resolution of the alleged "conflicting claims" of CBM ownership.  This money belongs to, but has never been paid to, Plaintiff and the Class Members.

5.      CNX deprived Plaintiff and the Class Members of CBM production and/or production revenues attributable to Plaintiff's and the Class Members' gas estate interests by

claiming that the coal estate owners identified by CNX own or may own the CBM that CNX produces.

6.     CNX's claims and course of conduct are unfounded and contrary to the law.  The Virginia Supreme Court held eight years ago that CBM "is a distinct mineral estate" from coal, and that landowners (gas estate owners) retain the rights to CBM located on their property when they convey or lease coal rights.  *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 238, 267 Va. 549, 556 (2004).  Virginia's General Assembly has codified th*e Ratliff* rule.  VA. CODE ANN. § 45.1-361.21:1:  "A conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas."  Therefore, controlling statutory and common law in Virginia holds that as between (a) a person owning the gas estate interests in a CBM Unit tract on the one hand, and (b) a different person owning the coal estate interests in the tract on the other hand, there is no conflict: the CBM produced from the CBM Unit tract is owned by the gas estate interest owner, not the coal estate interest owner, as a matter of law.

7.     The "deemed leases" imposed on Plaintiff and the Class Members were conditionally imposed, in that those "leases" are, in accordance with VA. CODE ANN. § 45.1-361.22(6), "subject to a final legal determination of ownership."  Plaintiff requests this Court make that ownership determination in the manner described herein.

8.     Plaintiff's primary goal in this case is to obtain from this Court the "final legal determination of ownership" that the statute requires, which would have substantial benefits to Plaintiff and the Class Members, including entitling them to finally receive the many years' worth of their money that has been held in escrow or retained by CNX as a result of ownership conflicts that do not exist.

9. On behalf of the Class, Plaintiff seeks a judgment establishing and directing, *inter alia*, that:

> a. Because a conveyance, reservation, or exception of coal does not include CBM as a matter of law, no CBM ownership conflict exists as a matter of law as between (i) a person owning gas estate interests in a CBM Unit tract, and (ii) a different person owning coal estate interests and not gas estate interests in the CBM Unit tract;

> b. Because a conveyance, reservation, or exception of coal does not include CBM as a matter of law, Plaintiff and the Class Members are entitled to receive the CBM proceeds that are attributable/allocated to those CBM Unit tracts as to which CNX has determined that Plaintiff and the Class Members are gas estate interest owners, but as to which CNX has further asserted that there are conflicting claims of CBM ownership between Plaintiff and the Class Members (as gas estate interest owners/lessors) on the one hand, and persons identified by CNX as owning coal estate interests and not gas estate interests on the other hand;

> c. All CBM proceeds in the Board's escrow account that are attributable to Plaintiff's and the Class Members' respective CBM interests and that have been deposited into the escrow account due to alleged conflicting claims of CBM ownership with persons identified by CNX as owning coal estate interests and not gas interests, must be released from the Board's escrow account and paid over to Plaintiff and the Class Members;

> d. All CBM proceeds attributable to Plaintiff's and the Class Members' CBM interests that were not deposited by CNX into the Board's escrow account but have been held by CNX and not paid to Plaintiff and the Class Members due to alleged conflicting claims of CBM ownership with persons identified by CNX as owning coal estate interests and not gas interests, must be paid by CNX to Plaintiff and the Class Members;

> e. CNX, as the CBM Unit operator, must account to Plaintiff and the Class Members as unleased mineral owners, e.g., on an eight-eighths (8/8ths) basis, net of operational expenses, and do so as to both past production and future production;

    f.      CNX must account for the methodology it used to calculate the escrowed proceeds, must prove that it sold the CBM at the highest price obtainable and otherwise calculated the proceeds (8/8ths, net of operational expenses) properly, and must pay over to Plaintiff and the Class Members any proceeds CNX calculated improperly or failed to deposit into escrow; and

    g.      If the "deemed lease" provisions of the Gas Act are not interpreted as written but are instead interpreted to confine and limit Plaintiff's and the Class Members' rights and remedies to the recovery of past and/or future proceeds based only on a 1/8th net proceeds "deemed lease" royalty interest, then those statutory provisions, as so interpreted and applied, must be held to be an unconstitutional taking and transfer of Plaintiff's and the Class Members' valuable CBM rights, interests and properties to CNX, for private purposes, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 11 of the Virginia Constitution; or alternatively, the deemed lease royalty provisions ("1/8th net proceeds" royalty rate and paltry cash bonuses of $1.00 per acre and $5.00 per acre) established by the Gas Act and/or by the provisions of CBM Unit pooling orders issued by the Board, constitute an unconstitutional taking without adequate or just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and in violation of Article I, Section 11 of the Virginia Constitution; and -- in either event -- the deemed leases CNX seeks to impose must be declared void and unenforceable and CNX must account to Plaintiff and the Class Members as unleased mineral owners and must disgorge and pay over to Plaintiff and the Class Members an amount of money equal to eight-eighths (8/8ths) of the value of all CBM attributable to Plaintiff's and the Class Members' interests that has been (or will be) produced and sold by CNX, together with interest thereon and any monetary or economic benefits, advantages or profits derived therefrom by CNX.

## PARTIES

### Plaintiff

10.      Plaintiff, Jeffery Carlos Hale, is an adult resident citizen of North Carolina., Plaintiff is the owner of land and gas interests, including CBM, in Buchanan County, Virginia.

### Defendant

11.      Defendant CNX Gas Company, LLC is a limited liability company organized under the laws of the Commonwealth of Virginia and has its principal office at 1000 Consol Energy Drive, Canonsburg, Pennsylvania 15317-6506.  The sole member of CNX Gas Company, LLC, is CNX Gas Corporation.  CNX Gas Corporation is an out-of-state corporation organized under the laws of the State of Delaware and has its principal office at 1000 Consol Energy Drive, Canonsburg, Pennsylvania.    For the purposes of subject matter jurisdiction under 28 U.S.C. §1332(a), the citizenship of CNX Gas Company, LLC is the citizenship of its sole member, CNX Gas Corporation; therefore, for the purposes of 28 U.S.C. §1332(a), CNX Gas Company, LLC is a citizen of either Delaware (where CNX Gas Corporation was incorporated) or of Pennsylvania (where CNX Gas Corporation has its principal place of business).  Alternatively, for the purposes of subject matter jurisdiction under 28 U.S.C. §1332(d), CNX is a citizen of Virginia, under whose laws it was organized and where it has its principal place of business.

## JURISDICTION

12.       Plaintiff, individually and on behalf of the Class, seeks the issuance of a declaratory judgment pursuant to 28 U.S.C. § 2201(a). Plaintiff, individually and on behalf of the Class, also seeks injunctive relief and/or damages as a result of the matters described hereinafter.

13.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the named plaintiff, on the one hand, and the defendant, on the other hand, are citizens of different States, and as between the named parties, the matter in controversy exceeds

$75,000, exclusive of interest and costs. Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and because one or more members of the Class are citizens of a State different from Defendant CNX Gas Company, LLC. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question) because this action arises under the Constitution of the United States. This Court has supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. §1367.

14. This Court has personal jurisdiction over CNX because, *inter alia*, CNX conducts business in the Commonwealth of Virginia, including, *inter alia*, producing gas in the Commonwealth of Virginia, and entering into agreements for the sale of property and property rights located in the Commonwealth of Virginia.

15. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the acts and transactions complained of herein occurred in this District, and pursuant to 28 U.S.C. §1391(a)(3) because CNX is subject to personal jurisdiction at the time this action is commenced.

## **DEFINITIONS**

16. The following definitions apply to this Complaint:

a. "Board" means the Virginia Gas and Oil Board.

b. "CBM" means coalbed methane gas.

c. "CBM Unit" is a CBM drilling unit operated by CNX and established by a pooling order issued by the Board.

d. "CNX" means CNX Gas Company, LLC, and its predecessors and predecessors-in-interest, including Pocahontas Gas Partnership, Buchanan Production Company, and OXY USA, Inc.

e.      "DGO" means the Division of Gas and Oil of Virginia's Department of Mines, Minerals and Energy.

f.      "Including" means "including, without limitation."

g.      "Person" or "persons" means any natural person or any proprietorship, corporation, joint venture, partnership, or other business, legal, or governmental entity or association.

h.      "Subject Virginia Counties" means Buchanan, Russell, and Tazewell Counties, Virginia, and all other Virginia Counties in which CNX operates (or has operated) CBM well/units.

i.      This action does not assert any claims Plaintiff and the Class Members may have for the underpayment of royalties on gas produced from conventional gas wells. All such claims are expressly reserved.

## FACTUAL ALLEGATIONS

### Background

17.      This case concerns CBM produced by CNX from certain CBM Units located in the Subject Virginia Counties.

18.      Various persons and entities hold the right to extract coal through coal mining operations in the Subject Virginia Counties.  The coal owners mine and produce coal -- or hold the right to mine and produce coal -- based upon their ownership of the coal estate and/or their leasehold rights to the coal estate.

19.      CBM is a natural gas that resides in coal seams. Coal companies have historically ventilated or otherwise removed CBM from their coal mines as a safety measure, and discharged the CBM into the atmosphere.  However, during the 1970's, technological advances made the

commercial production and sale of CBM feasible, and CBM wells began to be drilled in connection with and independent from mining.

20.     In 1990, the Virginia General Assembly enacted the Virginia Gas and Oil Act, VA. CODE ANN. §§ 45.1 - 361.1, *et seq.* (the "Gas Act").  When the Gas Act was enacted, there was uncertainty in Virginia about the <u>legal</u> question of whether CBM produced from a CBM well was owned by (a) the owner(s) of the gas estate on the one hand, or (b) the owner(s) of the coal estate on the other hand.  The Gas Act facilitated the drilling and production of CBM, without waiting for this legal question to be judicially or legislatively decided, by making it relatively easy for companies like CNX to force-pool all gas and coal interest owners in a Board-established CBM Unit for the production of CBM.  The Gas Act required the operator of the drilled well to place all proceeds from the sale of CBM attributable to "conflicting" CBM ownership interests into escrow until, *inter alia*, "a final decision of a court of competent jurisdiction adjudicating the ownership of coalbed methane gas as between [the conflicting claimants]." *See* VA. CODE ANN. §45.1-361.22(4) and (5).

21.     CBM is defined by the Gas Act as "occluded natural gas produced from coalbeds and rock strata associated therewith."  VA. CODE ANN. §45.1-361.1. CNX began producing and selling CBM from the Subject Virginia Counties in the 1990's.  CNX's CBM operations are extensive.  CNX currently operates more than 3,200 CBM wells in the Subject Virginia Counties, resulting in the annual production of millions of Mcf of CBM that has been marketed and sold by CNX.

22.     More than 500 CBM Units operated by CNX were established by "force-pooling" orders issued by the Board under §45.1-361.22 of the Gas Act. Each such pooling order defines the drilling unit and the location of the CBM well(s) within the unit; lists the separate tracts (or

parcels) comprising the unit and the acreage in each tract/parcel; identifies the gas estate owner(s) and the coal estate owner(s) for each tract and the portion of the unit assigned to each owner's interest; identifies those claimants whose interests are subject to escrow; pools all of the interests and estates in and to the gas in the drilling unit; and designates CNX as the unit operator authorized to drill and operate the well(s), subject to permit provisions in the Gas Act and to applicable administrative regulations and field rules, as amended from time-to- time.

23.    In most instances, a CBM Unit is comprised of two or more separately owned tracts.  The CBM produced by CNX from a CBM Unit is allocated among the separate tracts on a proportionate acreage basis, *i.e.*, the portion of CBM production allocated to a tract is in the same proportion which the tract's acreage bears to the total acreage in the CBM Unit. (For example, if a CBM Unit is 100 acres and is comprised of one tract (Tract 1) containing 60 acres, another tract (Tract 2) containing 30 acres, and another tract (Tract 3) containing 10 acres, then the CBM produced from the CBM Unit's well(s) would be allocated among the tracts as follows: Tract 1 – 60%; Tract 2 – 30%; and Tract 3 – 10%.)  The CBM production allocated to a particular tract is shared among the tract's gas owners on a proportionate ownership basis.

## CNX's Force-Pooled Units

24.    Beginning in the early 1990's, whenever CNX prepared an application to the Board for the establishment of a force-pooled CBM Unit, CNX -- as the applicant and proposed operator -- conducted extensive title searches to identify all of the potential owners of an interest in the CBM underlying each tract in the proposed CBM Unit, including the identity of the gas estate interest owners and the coal estate interest owners in each CBM Unit tract. After its title searches were complete, CNX filed a sworn application with the Board requesting that the Board enter an order pooling all interests and estates in the CBM Unit. CNX included in its application

a list or schedule that separately identified (a) the gas estate interest owner(s) in each CBM Unit tract, and (b) the coal estate interest owner(s) in the tract. When it filed its application for a pooling order, CNX simultaneously sent (or was supposed to send) a copy of its application to all of the listed interest owners pursuant to §45.1-361.22(1) of the Gas Act.

25.     As to each tract in which the owner of the gas estate is different from the owner of the coal estate, CNX consistently (always) represented to the Board in its sworn applications and sworn testimony that a "conflicting claim" to the ownership of CBM existed as between the gas estate interest owner(s) on the one hand, and the coal estate interest owner(s) on the other hand. The conflicting claim arose from the legal question of whether the CBM produced from a CBM unit is owned by (a) the gas estate owner, or (b) the coal estate owner. (In many of CNX's CBM Unit tracts, the same person(s) owns both the gas estate and the coal estate in the tract, in which event no conflicting claim of CBM ownership was asserted.) CNX further stated under oath that an escrow account would need to be established for the proceeds attributed to the CBM Unit tract(s) in which CNX asserted that a CBM ownership conflict existed.

26.     Following the approval of CNX's applications by the Board, CNX submitted pooling orders to the DGO for the Chairman of the Board to sign and for the Director of the DGO to record with the Clerk of the Court in the county in which the CBM Unit was located. Each of the pooling orders and supplemental pooling orders issued by the Board for CNX's force-pooled CBM Units incorporated CNX's ownership lists/schedules and adopted CNX's assertions that "conflicting claims" of CBM ownership existed between gas estate owners on the one hand, and coal estate owners on the other hand.

27.     The Board does not (as CNX and the Board agree) possess the legal authority to challenge a CBM operator's assertion of conflicting claims of CBM ownership nor possess the

legal authority to adjudicate CBM ownership or otherwise resolve any CBM ownership conflicts that are asserted by the operator.

28.     The application attached hereto as Exhibit "A" is a representative sample of the pooling applications that have been filed by CNX with the Board; and the Board order attached hereto as Exhibit "B" is a representative sample of the pooling orders that have been entered by the Board pursuant to CNX's applications. The attached application and attached order pertain to Unit No. FF-23 (Board Docket No. VGOB-99-0216-0709). The documents list, for each tract, the names of the persons owning interests in the tract (*see* page 1 of Exhibit A to CNX's application); and reflect, for example, that the persons holding "coal fee ownership" interests and the persons holding "oil and gas fee ownership" interests in Tracts 2A and 2B are "conflicting owners/claimants" (*see* paragraph 3 of the attached Board order and also Exhibit "E" to the order).

29.     After obtaining the necessary permits and/or orders from the Board, CNX, as the operator of the CBM Units, completed, operated, and produced each CBM Unit/well and took possession of and sold the CBM it produced. The CBM sales proceeds attributable to the "conflicting claims" of the gas estate owners (including Plaintiff and certain Class Members) and coal estate owners were (or were supposed to have been, but have not been) deposited by CNX into a Board-established escrow account per the provisions of Va. Code Ann. §45.1-361.22.

30.     Section 45.1-361.22(5) of the Gas Act currently provides that "[t]he Board shall order payment of principal and accrued interest, less escrow account fees, from the escrow account to conflicting claimants only after (i) a final decision of a court of competent jurisdiction adjudicating the ownership of coalbed methane gas as between them; (ii) a determination

reached by an arbitrator pursuant to §45.1-361.22:1; or (iii) an agreement among all claimants owning conflicting estates in the tract in question or any undivided interest therein."

### The Illusory CBM Ownership Conflict

31.     Plaintiff and the Class Members are the persons and entities who have been identified by CNX in its Board filings as the owners of unleased gas estate interests in a CBM Unit tract, but whose ownership of the CBM/CBM proceeds allocated to that tract has been further identified by CNX as being in "conflict" with persons identified by CNX as owning coal estate interests (and not gas estate interests) in the tract. According to CNX, the coal estate owners have claims to the ownership of CBM that conflict with Plaintiff and the Class Members, who own gas estate interests in the tracts. Because of CNX's assertion of such ownership conflicts, the CBM proceeds owed by CNX to Plaintiff and the Class Members have not been released from escrow or otherwise paid over to Plaintiff and the Class Members.

32.     Through this action, Plaintiff requests, on behalf of himself and the Class, that the Court enter a judgment declaring that the CBM ownership conflicts asserted by CNX do not exist and that Plaintiff and the Class Members are entitled to receive all CBM proceeds that have not been paid to them due to CNX's assertions of such conflicting claims. Such a declaration is a straightforward legal issue.

33.     As noted above, when the Gas Act was enacted in 1990 there was uncertainty in Virginia about the legal question of whether CBM produced from a CBM Unit was owned by (a) the owners of the gas estate on the one hand, or (b) the owners of the coal estate on the other hand. The answer to that legal question was eventually provided by both the Virginia Supreme Court and the Virginia General Assembly.

34.     In March 2004, the Virginia Supreme Court rejected the defendant coal owner's assertion "that it, as the owner of the coal estate, owns the CBM"; held that CBM is a gas and "is a distinct mineral estate" from coal; and held that landowners (gas estate owners) retain the rights to CBM located on their property when they convey or lease coal rights. *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 235 and 238 (Va. 2004).

35.     In April 2010, the Virginia General Assembly codified the holding of *Ratliff* through its enactment of VA. CODE ANN. §45.1-361.21:1, which provides as follows:

> A conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas. Nothing in this section shall affect a coal operator's right to vent coalbed methane gas for safety purposes or release coalbed methane gas in connection with mining operations. The provisions of this section shall not affect any settlement of any dispute, or any judgment or governmental order, as to the ownership or development of coalbed methane gas made or entered prior to the enactment of this provision.

VA. CODE ANN. §45.1-361.21:1. This statute was enacted April 13, 2010. *See* Acts 2010, cc. 730 & 762, cl. 3.

36.     *Ratliff* and §45.1-361.22:1 established that a conveyance, reservation, or exception of coal does not include CBM. Therefore, if a person owns coal estate interests and not gas estate interests in a CBM Unit, that person is <u>not</u> the owner of the CBM produced from the CBM Unit, as a matter of law. The CBM is, rather, owned by the CBM Unit's gas estate owners. (Colloquially speaking, *Ratliff* and §45.1-361.22:1 stand for the basic premise that "gas (including CBM) is gas, and coal is coal.")

37.     A person may, of course, own <u>both</u> the gas estate in a CBM Unit tract <u>and</u> the coal estate in the tract, in which event the person would own the CBM produced from the tract -- but that ownership would be premised on her gas estate ownership, not her coal estate ownership. This case concerns, however, only those situations in which the gas estate and the coal estate

have been severed, with one person (or group of persons) owning the gas estate, and a different person (or group of persons) owning the coal estate.

38.    There are no material facts in dispute. CNX has asserted the existence of "conflicting" CBM ownership between gas estate owners on the one hand, and the owners of the coal estate interests (and not gas estate interests) on the other hand; but no ownership "conflict" exists. Under *Ratliff* and/or §45.1-361.21:1, a person owning coal estate interests and not gas estate interests is not the owner of CBM produced from a CBM unit, as a matter of law. In other words, as between a person owning the gas estate in a CBM unit tract and a different person owning the coal estate and not gas interests in that same tract, the CBM produced from the tract is owned by the person owning the gas estate, as a matter of law.

39.    Plaintiff requests, therefore, that this Court enter a judgment declaring, based on *Ratliff* and/or §45.1-361.21:1, that as a matter of law, Plaintiff and the Class Members are entitled to receive the CBM proceeds that are attributable/allocated to their respective interests in those CBM Unit tracts as to which CNX has determined that Plaintiff and the Class Members are gas estate interest owners, but as to which CNX has asserted that there are conflicting claims of CBM ownership between Plaintiff and the Class Members (as gas estate interest owners) on the one hand, and persons identified by CNX as owning coal estate interests and not gas estate interests on the other hand.

40.    Under VA. CODE ANN. §45.1-361.22(5)(a), Plaintiff and the Class Members will be entitled to receive their CBM proceeds from the Board's escrow account upon the entry of a "final decision of a court of competent jurisdiction adjudicating the ownership of coalbed methane gas as between [the conflicting claimants]." In the unique context of this case, such an

adjudication of CBM ownership can properly be obtained through the requested declaration that the CBM ownership "conflict" asserted by CNX does not exist as a matter of law.

41.    The requested adjudication of ownership does not involve factual issues and disputes (and is not an adjudication of ownership "as against the world"), but is a narrow adjudication that (a) has been framed by and will be limited to CNX's ownership lists/schedules, and (b) hinges on the simple, straightforward application of a dispositive legal principle to CNX's ownership lists/schedules. CNX conducted title examinations for each and every one of its CBM Unit tracts and prepared lists/schedules identifying all of the interest owners and the nature of their respective interests (gas or coal). This is, therefore, not a case in which Plaintiff and the Class Members must submit "chains of title" and "re-establish" that they own gas estate interests and that the "conflicting" coal estate owners own coal estate interests and not gas estate interests. Those determinations of gas and coal ownership have already been made by CNX, as the operator of the CBM Units. Instead, this case concerns only the alleged "conflict," i.e., the legal question of whether the CBM produced by CNX from its CBM Units is owned by the persons identified by CNX as owning gas estate interests or by the persons identified by CNX as owning coal estate interests (and not gas interests). The requested declaration -- that the CBM ownership "conflict" asserted by CNX does not exist -- will and should, in these unique circumstances, constitute an adjudication of CBM ownership sufficient to enable Plaintiff and the Class Members to receive their CBM proceeds pursuant to §45.1-351.22(5)(a).

42.    In addition, the historical assertion of so-called "conflicting claims" of CBM ownership between gas estate owners and coal estate owners occurred because CNX -- as the CBM Unit operator -- asserted the existence of such conflicts. Indeed, as to the force-pooled CBM Units, the Gas Act contemplates that the presence of CBM ownership "conflicts" would be

recognized by the Board upon the CBM operator's (CNX's) assertion of a conflict in its pooling application; and the Board has taken the position that it does not possess the legal authority to challenge, adjudicate, or otherwise resolve any CBM ownership conflicts that are asserted by the operator. Because of this -- and because the asserted "conflicts" at issue in this case are not fact questions but are legal questions unanswered when the Gas Act was passed but now answered by *Ratliff* and §45.1-361.22:1 -- the relief Plaintiff seeks for himself and the Class Members can properly and should be provided as a matter of law through the entry of a declaratory judgment and/or injunctive relief against the operator (CNX) alone. As the presence of a conflict may be established by the CBM operator alone, so may the <u>absence</u> of a conflict be established through the entry of a declaratory judgment against the operator alone.

43.  Plaintiff requests, therefore, that this Court specifically declare that Plaintiff and the Class Members are entitled to receive from the Board's escrow account and/or from CNX directly, all CBM proceeds attributable to their respective gas estate interests as identified by CNX in its ownership lists/schedules; declare that its judgment is and shall in all respects be treated as sufficient to enable Plaintiff and the Class Members to obtain all of the CBM production proceeds that are attributable to their respective gas estate interests in the subject CBM Unit tracts, including all proceeds that were (or were supposed to have been, but have not been) deposited by CNX into the Board-established escrow account; and declare that its judgment shall be treated as an adjudication of ownership sufficient for the release of escrowed monies to the Plaintiff and Class Members pursuant to §45.1-361.22(5)(i) of the Gas Act.

44.  The Court should also direct CNX to, in consultation with Plaintiff's counsel, present the Court's judgment to the Board and take all necessary steps to obtain the release of such CBM proceeds from the Board's escrow account, plus all interest accrued (or which could

or should have accrued) thereon, and to have such monies paid over to Plaintiff and the Class Members; and the Court should direct CNX to release and pay over to Plaintiff and the Class Members all CBM proceeds attributable to their respective interests that were retained by CNX and withheld from Plaintiff and the Class Members, plus prejudgment and equitable interest thereon.

45.     Plaintiff also requests that this Court enter a judgment declaring that Plaintiff and the Class Members are, as to future production, entitled to receive CBM proceeds directly from CNX and that CNX shall not deposit any such CBM proceeds into the Board's escrow account nor otherwise withhold any such proceeds due to the alleged (but non-existent) CBM ownership "conflicts" with coal estate owners.

46.     The coal estate owners identified by CNX as so-called "conflicting claimants" with Plaintiff and the Class Members are neither necessary nor indispensable parties to this action. Virginia law, as established in *Ratliff* and/or §45.1-361.21:1, provides that such coal estate owners -- as the owners of coal estate interests and not gas estate interests in the subject tracts -- do not have any legally protected interests in the subject CBM production as a matter of law and do not have a legitimate claim to the CBM production. In other words, *Ratliff* and §45.1-361.21:1 established and confirmed that no cognizable "conflicting claim" of CBM ownership even exists between a person owning the gas estate and a different person owning coal estate interests and not gas estate interests: as a matter of law, as between a person owning the gas estate and a person owning coal estate interests and not gas estate interests, the CBM produced from a CBM Unit formed pursuant to the Gas Act is owned by the person owning the gas estate and not by the owner of coal estate interests.

47.     The requested relief also will have no effect on the separate rights coal estate owners possess under the law as the owners of the coal estate. For example, §45.1-361.21:1 preserves "a coal operator's right to vent coalbed methane gas for safety purposes or release coalbed methane gas in connection with mining operations." In addition, under the Gas Act, a permit must be obtained to drill a CBM well or convert a methane drainage borehole into a CBM well, and such a permit may not be issued unless the permit applicant (i.e., the proposed operator of the proposed CBM Unit/well) has obtained a signed consent to stimulate the well from the coal operator(s) as provided in VA. CODE ANN. §45.1-361.29(F). Such permits and consents have already been obtained by CNX for its past and current CBM Units, and CNX will have to comply with the Gas Act for its future CBM wells, if any.

48.     Furthermore, the release of escrowed proceeds to the gas estate interest owners can be resolved properly and most efficiently through the entry of a judgment against CNX alone. There are currently more than 5,000 CBM units/wells operating and producing CBM in Virginia. Discovery obtained and further investigation by Plaintiff's counsel have revealed that: (a) there are more than 500 CBM Units operated by CNX that were established by pooling orders issued by the Board, and there are hundreds of "conflicting" coal estate owners in those force-pooled CBM units; (b) there are more than 1,000 CBM units operated and formed by CNX as "voluntary" (not force-pooled) CBM Units, and there will likely be many hundreds of coal estate owners who are "conflicting" coal estate owners in CNX's voluntary CBM Units; and (c) there are many hundreds of coal estate owners who are "conflicting" coal estate owners in CBM units operated by other CBM operators in Virginia. Plaintiff previously contemplated naming all of the "conflicting" coal estate owners in CNX's force-pooled CBM Units as defendants in this action, but formally naming each and every coal estate owner in this proceeding (and in similar

ownership class actions against other CBM operators) will impose unnecessary administrative burdens and expenses on this Court and on the parties; and the presence of those coal estate owners as named defendants in this proceeding (and in similar ownership class actions) would not alter the dispositive legal principles established in *Ratliff* and §45.1-361.21:1.

49.    This Court should take a practical, pragmatic approach to the resolution of the sweeping and widespread difficulties spawned by the Gas Act's escrow provisions, which were enacted prior to the judicial (*Ratliff*) and legislative (§45.1-361.21:1) pronouncements of Virginia law on the respective CBM rights of gas estate owners and coal estate owners. There are significant and compelling public interests at issue. If *Ratliff* and/or §45.1-361.21:1 had been in place at the time of the Gas Act's passage, no conflicting claims of CBM ownership would have (or could have legitimately) been asserted, and the Gas Act's unique escrow provision would not have even been necessary. While well-intentioned at its inception, the Gas Act, as written and/or as applied by CNX, has resulted in many thousands of gas estate owners being deprived of CBM production proceeds which they own and are entitled to receive. Their proceeds are in escrow (and/or in internal "suspense" accounts) based upon asserted conflicts of CBM ownership by CNX <u>that do not even exist as a matter of law</u>. The obstacles faced by and frustrations of the people of Southwest Virginia regarding the deprivation of their CBM proceeds -- monies many of them desperately need -- have been well documented in, *inter alia*, the Pulitzer Prize-winning series of articles authored by Daniel Gilbert and published in the *Bristol Herald Courier*. By entry of the requested judgment against CNX alone, this Court can properly, promptly and efficiently remedy the past injustices that have been imposed upon many thousands of Southwest Virginia gas estate owners and ensure that future CBM production proceeds are immediately paid to and no longer withheld from those gas estate owners. While this Court may consider

providing the coal estate owners in CNX's CBM Units with notice of this proceeding and an opportunity to intervene should they desire to do so, using the notice methods and provisions set out in §45.1-361.19 of the Gas Act (the same methods and provisions of notice used by CNX in bringing the proceedings resulting in the aforesaid claims of "conflict," the forced pooling and the deemed leases at issue), or may consider establishing a defendant class of coal estate owners under Rule 23 of the Federal Rules of Civil Procedure, the required joinder of hundreds of coal estate owners in this action as named defendants is burdensome and simply not necessary.

### **Further Injunctive Relief**

50. *Ratliff* and §45.1-361.21:1 are controlling Virginia law. Nevertheless, CNX has ignored *Ratliff* and §45.1-361.21:1 and continues to assert in its establishment of new CBM Units that CBM ownership conflicts <u>always</u> exist between gas estate owners on the one hand and coal estate owners on the other hand. CNX has thereby improperly caused CBM production proceeds owed to and owned by gas estate owners to be escrowed in the Board's escrow account or to be "suspended" and held by CNX. CNX continues to improperly assert such (nonexistent) conflicts for its own selfish purposes. Specifically, whenever CNX asserts the existence of an ownership conflict, the proceeds that would otherwise be payable to the gas estate owner are placed in the Board escrow account or held by CNX in suspense. This creates substantial, improper advantages for CNX.

51. One improper advantage is that for CNX's voluntary (not force-pooled) CBM units, claiming a "conflict" allows CNX to keep the gas estate owners' royalties in suspense for years, indefinitely, and allows CNX to use those monies to fund CNX's operations. Such conduct results in CNX converting the royalties to its own use and improperly using those funds as "free loans," which CNX contends need not be "repaid" until a "judicial determination of

ownership" is obtained by the gas estate owner or a "split" agreement is reached between the gas estate owner and the coal estate owner.

52. Another improper advantage flows to CNX when it proclaims that the coal estate interest owner (virtually always CNX's lessor) has a claim to the ownership of the CBM. The assertion of such a claim by CNX enables CNX to (a) force pool interests in a CBM Unit based solely upon leases it has obtained from coal estate owners, i.e., without CNX owning any gas interests/gas leases whatsoever, and (b) utilize the Gas Act's "deemed lease" provisions to (improperly) obtain a leasehold interest in the gas estate, "game the system," and leverage itself into a gas interest ownership position it may not otherwise be able to obtain. By continuing to improperly assert that CBM ownership conflicts exist between gas estate interest owners and coal estate interest owners, CNX is manipulating and abusing the Gas Act to enable it to drill CBM wells under false claims of ownership and obtain "deemed leases" for gas estate owners, including without notice and/or payment to the rightful CBM owners.

53. CNX's actions as described above constitute a conversion of the gas estate owners' interests and CBM production proceeds. CNX will continue to engage in such conduct unless and until it is enjoined by this Court from doing so. Plaintiff therefore requests, based on *Ratliff* and §45.1-361.21:1, that this Court issue a judgment directing CNX to cease and desist from (falsely) asserting the existence of CBM ownership conflicts between gas estate interest owners on the one hand, and coal estate interest owners on the other hand. Specifically, in those situations in which a person owns coal estate interests and no gas estate interests in a proposed CBM Unit tract, then CNX should be enjoined from asserting that the coal estate interest owner has a conflicting claim of CBM ownership *vis-à-vis* the gas estate interest owner(s) in the tract.

## Nullification of the Deemed Lease

54.     The CBM Unit proceedings instituted by CNX resulted in the entry of Board orders providing that Plaintiff and the Class Members (the true owners of the CBM) were "deemed" to have leased their CBM interests in the CBM Units to CNX. *See* VA. CODE ANN. §45.1-361.22(6) ("Any person who does not make an election under the pooling order shall be deemed, subject to a final legal determination of ownership, to have leased his gas or oil interest to the coalbed methane gas operator as the pooling order may provide.")

55.     Such "deemed leases" were conditionally imposed, in that those "leases" are, in accordance with VA. CODE ANN. §45.1-361.22(6), "subject to a final legal determination of ownership."

56.     The Board does not (as CNX and the Board agree) have the authority to make "a final legal determination of ownership."

57.     Plaintiff respectfully asks this Court to apply *Ratliff* and §45.1-361.21:1 and make, in the manner described herein, an ownership determination in favor of Plaintiff and the Class Members.

58.     Such a "final legal determination of ownership" of the CBM in favor of Plaintiff and the Class Members will nullify the deemed leases conditionally imposed upon them, voiding the deemed leases *ab initio*, and Plaintiff requests the entry of a declaratory judgment to that effect.

59.     Plaintiff further requests that this Court enter a judgment declaring that Plaintiff and the Class Members are unleased mineral owners and that CNX must account to Plaintiff and the Class Members as such. Accordingly, Plaintiff and the Class Members are, as to the past production of CBM by CNX, entitled to receive from the Board's escrow account and/or from

CNX directly, all (8/8ths) proceeds attributable to their interests (net of proper operating costs) and the Court should direct CNX to instruct and otherwise authorize the Board to release such proceeds from escrow, plus all interest accrued (or which could or should have accrued) thereon, and pay such monies over to Plaintiff and the Class Members. In addition, Plaintiff and the Class Members, as unleased mineral owners, are entitled, as to future production, to elect to either (i) take "in-kind" and sell all (8/8ths) of the CBM that is attributable to their unleased CBM interests, or (ii) have CNX, as the CBM Unit operator, to (properly) sell all (8/8ths) of the CBM that is attributable to their unleased CBM interests and remit the proceeds for same to Plaintiff and the Class Members on a monthly basis (with arrangements to be made, in either event, for Plaintiff and the Class Members to bear their proportionate share of actual, direct and reasonable costs as unleased mineral owners).

### CNX's Escrow Account Obligations

60.     With regard to CNX's escrow payment obligations, CNX has asserted that it is only obligated to deposit "deemed lease" royalty payments ("1/8th net proceeds") into the escrow account.

61.     As a result, 7/8ths of the CBM sales proceeds attributable to Plaintiff's and the Class Members' "conflicting interests" have been retained by CNX for its own use and benefit, with no accounting or payment for same having been made to Plaintiff and the Class Members.

62.     CNX was obligated, however, as a "participating owner" under the Gas Act holding leasehold rights attributable to "conflicting interests," to deposit such 7/8ths proceeds (net of operating costs) into the escrow account. *See* VA. CODE ANN. §45.1-361.22(4).

63.     Under §45.1-361.22(6) of the Gas Act and the pooling orders issued by the Board, Plaintiff and the Class Members were "deemed" (subject to a final legal determination of

ownership) to have leased their gas interests to CNX. CNX thereupon purportedly became a "gas owner" as that phrase is defined in the Gas Act. *See* Section 45.1-361.1 ("gas or oil owner" defined as "any person who owns, <u>leases</u>, has an interest in, or who has the right to explore for, drill, or operate a gas or oil well as principal or as <u>lessee</u>." (emphasis added)).

64.     As to the leasehold interests CNX purportedly obtained via its deemed leases, CNX opted to become a "participating operator," which is a term defined by the Gas Act to mean "a gas or oil owner who elects to bear a share of the risks and costs of drilling, completing, equipping, operating, plugging and abandoning a well on a drilling unit and to receive a share of production from the well equal to the proportion which the acreage he owns or holds under lease bears to the total acreage of the drilling unit." VA. CODE ANN. §45.1-361.1 (definition of "participating operator").

65.     CNX  took possession of and sold the CBM Unit production attributable to the leasehold interests it purportedly obtained from the Class Members under its deemed leases.

66.     CNX  was supposed to pay all of its sales proceeds, net of operating expenses, into the Board's escrow account in accordance with §45.1-361.22(4) of the Gas Act, which provides: "The coalbed methane gas well operator shall deposit into the escrow account one-eighth of all proceeds attributable to the conflicting interests **plus** all proceeds in excess of ongoing operational expenses as provided for under §45.1-361.21 and the order of the Board attributable to a <u>participating</u> or non-participating <u>operator</u>." (Emphasis added.)  Because CNX's leasehold interests were attributable to "conflicting interests" (i.e., CNX derived its interests from gas owners whose claims of ownership were -- according to CNX -- in conflict with the CBM ownership claims of coal owners), CNX was not free to retain any proceeds for its own use and benefit, but was instead required by the Gas Act to place <u>all</u> such proceeds (net of operating

Case 1:10-cv-00059-JPJ-PMS Document 166 Filed 08/01/12 Page 26 of 51 Pageid#: 2040
Case 1:10-cv-00059-JPJ-PMS Document 146-1 Filed 06/15/12 Page 28 of 51 Pageid#:
1400

expenses) into escrow so that those proceeds would be available to the true owners (here, Plaintiff and the Class Members) upon a final legal determination of ownership in their favor.

67.     As written, the Gas Act's "deemed lease" and escrow provisions work together to (a) clarify the legal authority of the operator to produce and sell the CBM attributable to "conflicting claims" until the CBM ownership claims could be resolved, and (b) preserve and protect for the true owners all of the proceeds attributable to the conflicting interests.

68.     To the extent CNX has deposited into escrow the proper amount of proceeds attributable to Plaintiff's and the Class Members' gas estate interests (8/8ths proceeds minus operating costs), Plaintiff and the Class Members are entitled to receive a judgment from the Court directing CNX to instruct and otherwise authorize the Board to release such escrowed proceeds to Plaintiff and the Class Members, including all escrow account interest accrued thereon.

69.     To the extent, however, that CNX failed to properly pay such proceeds into escrow (which Plaintiff alleges is likely), CNX should be required, via the entry of a judgment, to pay to Plaintiff and the Class Members an amount of money equal to the total amount of proceeds CNX should have deposited, but failed to deposit, plus prejudgment and equitable interest thereon, and plus the value of any monetary or other economic advantages, profits, and benefits, including attendant tax credits, that CNX realized through its receipt, retention and use of said proceeds.

70.     The one-eighth payments that CNX deposited into escrow for the deemed leases were themselves calculated improperly.  The full extent of CNX's acts and omissions in regard to its payments (or non-payments) of "deemed lease" royalties is not currently known, and can only be determined adequately through an accounting and investigation of CNX's books,

records, and practices, including, without limitation, disclosure of detailed information relating to the handling and marketing of CBM produced by CNX and all other matters relating to CNX's calculation and payment (or nonpayment) of "deemed lease" royalty payments into escrow.

71.     For example, Plaintiff alleges upon information and belief that there are certain instances in which CNX has wholly failed to deposit Plaintiff's and the Class Members' "deemed lease" royalties  into escrow and has, instead, retained all (8/8ths) of the proceeds.

72.     Similarly, Plaintiff alleges upon information and belief that there are certain instances where the "deemed lease" royalties paid by CNX for Plaintiff and other Class Members into escrow were calculated improperly and were insufficient.  For example, in marketing the CBM it produced, CNX was obligated, by virtue of its undertakings and/or as the CBM Unit operator, to act as a reasonably prudent operator and to market and sell the CBM at the highest price obtainable.  However, in calculating and depositing its "deemed lease" royalty payments into escrow, CNX has, upon information and belief, improperly used gas prices that were less than the highest price obtainable, including prices from the sale of gas by CNX to affiliates on a non-arm's-length basis; and improperly used gas prices that were less than the actual proceeds received by CNX, including prices and proceeds CNX realized/received through swap contracts and other hedging and marketing activities.  In addition, the "deemed leases" do not provide for the deduction of taxes, but CNX nevertheless--and wrongfully--deducted severance or license taxes when calculating the deemed lease royalties.  Further, CNX deducted improper and/or excessive costs when calculating the deemed lease royalties, including production costs and also "post-production" charges that were in excess of actual, direct, necessary, and/or reasonable costs.

73.     As to a number of force-pooled CBM wells, CNX drilled, completed, and produced the well, and took possession of and sold CBM production <u>before</u> a pooling order had been entered by the Board.  CNX's production, possession, and sale of CBM prior to pooling were wrongful and unlawful, as such actions were in violation of the Gas Act and the Board's orders and/or regulations, and constitute trespass and/or conversion of the properties and interests of Plaintiff and certain Class Members.  In such situations, CNX must pay Plaintiff and the affected Class Members on an 8/8ths basis for production occurring between the date of first production and the effective date of the pooling order.  Further, such actions were taken by CNX in bad faith, and CNX should be required to disgorge all revenues received by CNX from such production and sales, without recovery of any production or other costs.

74.     Plaintiff and the Class Members demand and are entitled to receive a full and accurate disclosure and an accounting of all such matters from which the full extent of CNX's wrongful acts and omissions and Plaintiff's and the Class Members' resulting damages may be revealed.

75.     Plaintiff and the Class Members are entitled to recover from CNX all amounts that are shown to be owed by CNX as the result of such accounting, including prejudgment and equitable interest thereon at the maximum lawful rate.

76.     As set forth above, Plaintiff and the Class Members are entitled to receive all (8/8ths) of the proceeds attributable to their interests and produced by CNX in the past (through either the release of proceeds from escrow or from CNX, directly, if CNX failed to deposit the proceeds into escrow); and  are entitled, as to future production, to either take in kind and sell all (8/8ths) of the CBM that is attributable to their unleased CBM interests or have CNX, as the CBM Unit operator, to (properly) sell the CBM for their account.

77.     CNX may assert that, regardless of a final legal determination of CBM ownership in favor of Plaintiff and the Class Members, Plaintiff and the Class Members are bound by "deemed leases," and that their only remedies are to receive "deemed lease" royalties deposited into escrow for past production, and to receive "deemed lease" royalty payments directly for future production. Such a result would be contrary to the proper interpretation of the Gas Act, as written, and would, if applied, cause the "deemed lease" provisions of the Gas Act to be unconstitutional, as applied, on the grounds set forth below.

### The Unconstitutional Deemed Leases

78.     If the Court applies the plain language of the Gas Act as Plaintiff suggests above, then the Gas Act is being applied constitutionally, and the Court need not reach the unconstitutionality allegations outlined below.

79.     However, if the Court were to agree with CNX's interpretation of the Gas Act, including, *inter alia*, the allowance of permanent deemed leases in forced pooling orders in favor of an operator who has no true gas ownership or gas lease rights in the proposed unit, then the deemed lease provisions of the Gas Act (§45.1-361.22(6)) constitute a taking of Plaintiff's property rights for private purposes under State authority, in violation of the Fifth Amendment to the United States Constitution, and in violation of Article I, Section 11, of the Virginia Constitution; or, alternatively, constitute a taking of Plaintiff's property rights under State authority without adequate or just compensation, in violation of the Fifth Amendment to the United States Constitution and in violation of Article I, Section 11 of the Virginia Constitution.

80.     Plaintiff does not challenge the authority of the Commonwealth of Virginia to enact statutes containing reasonable and necessary provisions for the compulsory pooling of interests in a single pool, including a CBM Unit. Such a statute must, however, protect the

"correlative rights" of each gas owner having an interest in the unit, which rights have been defined by the Gas Act to mean "the right of each gas or oil owner having an interest in a single pool to have a fair and reasonable opportunity to obtain and produce his just and equitable share of production of the gas or oil in such pool or its equivalent without being required to drill unnecessary wells or incur other unnecessary expenses to recover or receive the gas or oil or its equivalent." VA. CODE ANN. §45.1-361.1 (definition of "correlative rights").

81. Under the Gas Act and CBM Unit pooling orders issued by the Board, an unleased mineral interest owner whose interests are force-pooled may elect either to (a) sell or lease his gas ownership to a participating operator, (b) enter into a voluntary agreement to share in the operation of the well at a rate of payment mutually agreed to by the gas owner and the gas operator authorized to drill the well, or (c) share in the operation of the well as a non-participating operator on a carried basis after the proceeds allocable to his share equal 200% of the share of such costs allocable to his interests. *See* VA. CODE ANN. §45.1-361.21(c)(7).

82. Section 45.1-361.22 of the Gas Act contains additional provisions applying specifically to the pooling of interests for CBM Units and provides: "Any person who does not make an election under the pooling order shall be deemed, subject to a final legal determination of ownership, to have leased his gas or oil interests to the coalbed methane gas well operator as the pooling order may provide." VA. CODE ANN. §45.1-361.22(6).

83. The pooling orders entered by the Board for CBM Units operated by CNX provide that Plaintiff and the Class Members were subject to a "deemed lease" of their CBM interests to CNX which provided for "royalties" on a "1/8th net proceeds" basis, with net proceeds being comprised of actual proceeds received by CNX from the sale of the CBM less costs incurred downstream of the wellhead, including, but not limited to, gathering, compression,

treating, transportation and marketing costs. (Such "royalties" were not paid to Plaintiff and the Class Members but were instead deposited (or should have been deposited) into an escrow account and are being held by the Board pending judicial resolution of the alleged "conflicting claims" of CBM ownership.)

84.     As interpreted and sought to be applied by CNX, the Gas Act's "deemed lease" provisions in §45.1-361.22(6) and corresponding provisions in the Board's pooling orders, unconstitutionally deprive Plaintiff and the Class Members, unleased mineral owners, of their property rights and interests.

85.     Specifically, where an unleased mineral owner does not choose to sell or lease its rights and interests or to participate on some basis in the operations, the "deemed lease" provisions are automatically invoked to effect a transfer of the property rights and interests of the unleased mineral owners (Plaintiff and the Class Members) to another private party (CNX).

86.     The unleased mineral owner is, thus, divested of its CBM ownership interests, which are transferred to the operator, and is left with only a 1/8th net proceeds royalty interest.

87.     One of the attributes of mineral ownership is the "executive right," which is the right of a gas owner to lease his interests to a third party under lease bonus, royalty rate, and other terms and conditions acceptable to the gas owner, in his sole discretion. The Board's establishment of a de facto standard 1/8th net proceeds royalty rate and meager lease bonuses of $1.00 per acre and $5.00 per acre, has eliminated the ability of unleased mineral owners in Virginia, including Plaintiff and the Class Members, to negotiate a lease with the CBM Unit operator or third parties on terms acceptable to the unleased mineral owners.

88.     Instead, the statutory "options" available under Virginia's law present Plaintiff and the Class Members with the proverbial Hobson's Choice.  If they attempt to procure a

negotiated lease at all, operators in Virginia, including CNX, offer unleased mineral owners a "take it or leave it" proposition, offering no more than the standard "deemed lease" royalty rate of "1/8th net proceeds."

89. If the mineral owner declines, CNX simply employs the "deemed lease" provision of Virginia's statutory scheme to procure the mineral owner's rights and interests for the 1/8th net proceeds royalty rate and $1.00/$5.00 per acre bonus.

90. Moreover, when presenting an unleased mineral owner with his or her (so-called) "election options," CNX and other CBM Unit operators have routinely engaged in practices intended and designed to induce or force unleased mineral owners into "deemed leases" and procure "deemed leases" for the operators improperly. For example, CNX has failed to undertake due diligence to locate unleased mineral owners and give direct notice to unleased mineral owners, including Plaintiff, otherwise failed to give adequate notice to unleased mineral owners, including Plaintiff, and routinely failed to disclose pertinent data and information, overstated well drilling, completion and operating costs, and underestimated anticipated recoverable CBM reserves, including to Plaintiff, so that unleased mineral owners, including Plaintiff and the Class Members (who are usually unsophisticated and inexperienced landowners lacking sufficient knowledge or information to understand the highly technical engineering, property administration, and other complex aspects of gas well operations and the complex cost and revenue accounting practices relating thereto) have no meaningful knowledge or understanding of the proposed operations or of the consequences of an election or failure to elect. Further, as to a number of CBM wells, when CNX presented unleased mineral owners with his or her "election options," CNX willfully, intentionally, and fraudulently failed to disclose to

the unleased mineral owners that CNX had already successfully completed the subject well and that CNX had, for a number of months, been producing and selling CBM from the well.

91.     Additionally, even if an unleased mineral owner were inclined to participate, the statutory scheme is designed to enable and empower CNX and other operators to discourage unleased mineral owners from so doing, because the operator can claim unilaterally and improperly (as CNX has done here) that unleased mineral owners have "conflicting claims" of CBM ownership with coal owners and thereby cause all of the proceeds attributable to those so-called "conflicting interests" to be held by the Board in escrow pending a final legal determination of ownership.

92.     The "deemed lease" provisions of the Gas Act -- as CNX asserts they must be applied -- do not relate to nor advance any legitimate State interest or the purposes, goals and objectives of the pooling laws.

93.     To be constitutional, a compulsory or forced pooling statute should only -- and need only -- "pool" the unleased mineral owners' rights and interests in the Unit and provide that if an unleased mineral owner does not elect to participate, then he will be treated as a non-participating ("carried") working interest owner.

94.     The "pooled" unleased mineral owner would thereby retain all (8/8ths) of his or her interests share in the production of CBM well as a non-operating working interest owner, and bear his or her proportionate share of operating costs on a non-participating ("carried") basis.

95.     The Gas Act's "deemed lease" provisions, however, go too far; it is not necessary for the pooling of an unleased mineral owners' interests, is not consistent with the constitutionally permissible purposes of the pooling law, and effects a taking of private property from the unleased mineral owner and the transfer of that private property to another private

person, for the benefit of that other private person (the operator), in violation of the United States and Virginia Constitutions.

96.     In addition to being an unconstitutional taking for private purposes (which is unconstitutional regardless of the amount of compensation paid for the taking), the deemed lease provisions are unconstitutional because they are premised on compensation that is inadequate and unjust.

97.     CNX's CBM wells are extremely low-risk (no-risk) operations, given that the wells are drilled at relatively shallow depths into coal seams that are known to contain substantial quantities of commercially recoverable CBM. In such circumstances, the deemed lease royalty terms (1/8th net proceeds royalty and paltry cash bonuses of $1.00 per acre and $5.00 per acre) are materially and substantially less than the royalty terms and provisions that could be obtained by unleased mineral owners through the negotiation of a gas lease in a free, open, and competitive market, and do not represent fair market value for the Plaintiff's and the Class Members' property interests.  This is particularly true in those circumstances in which CNX had (unlawfully) drilled, completed, and produced CBM wells prior to pooling by the Board.

98.     Accordingly, the "deemed leases" constitute a taking of Plaintiff's and Class Members' property rights without adequate and just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and in violation of Article I, Section 11 of the Virginia Constitution.

99.     If they have the effect asserted by CNX, the "deemed leases" are unconstitutional, and they are, therefore, unenforceable and void *ab initio*. Accordingly, Plaintiff and the Class Members are entitled, as unleased mineral owners, to receive from the Board's escrow account

and/or from CNX directly an amount of money equal to eight-eighths (8/8ths) of the value of all the CBM attributable to Plaintiff's and the Class Members' unleased mineral interests that has been produced and sold by CNX in the past; and are entitled to be treated as unleased mineral owners as to any future production.

100.    CNX requested that the Board implement the constitutionally deficient "deemed leases," and CNX thereby engaged in willful, wanton, outrageous, bad faith, anti-competitive, and otherwise improper conduct.  CNX should, therefore, be required, as to its past production, to make such 8/8ths payments to Plaintiff and the Class Members on a gross proceeds basis, without any deductions for a proportionate share of drilling, completion, or operating costs.

## PUNITIVE DAMAGES

101.    The acts and omissions of CNX as set forth hereinabove were willful and wanton and in utter disregard of the rights of Plaintiff and the Class Members, or were done with reckless disregard for their rights, thus entitling Plaintiff and the Class Members to punitive damages against CNX in an amount to be determined by the jury.

## COURT-APPOINTED EXPERT

102.    Plaintiff requests that the Court consider the appointment of an expert under Rule 706, FED. R. EVID., to assist the Court in the resolution of the accounting issues due to be resolved through this action, with all such costs for same, including the expert's compensation, to be paid by CNX.

## CLASS ACTION ALLEGATIONS

103.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the Class, defined as follows:

> Each person who has been identified by CNX as an "unleased" owner of gas estate interests in a tract included in a force-pooled coalbed methane gas unit operated by CNX in any of the Subject

Virginia Counties, and whose ownership of the coalbed methane gas attributable to that tract has been further identified by CNX as being in conflict with a person(s) identified by CNX as owning coal estate interests in the tract.

The Class excludes (a) the Defendant, and (b) any person who serves as a judge in this civil action and his/her spouse. The Class also excludes each gas estate owner who has entered a written agreement with a purported coal estate owner settling alleged conflicting claims of CBM ownership between them; provided, however, that this exclusion does not extend to those interests or rights of any such gas estate interest owner regarding lands, CBM units, CBM royalties and/or CBM proceeds that are not expressly covered and settled by any such settlement agreement.

104.     Plaintiff reserves the right to redefine the Class and/or establish subclasses as may be appropriate.

105.     The members of the Class are so numerous that joinder of all members is impractical.  Disposition of the claims in this action will provide substantial benefits to both the parties and the Court.

106.     Although the precise number and identity of the Class Members can be ascertained from the books and records of the Defendant, Plaintiff alleges, upon information and belief, that the Class exceeds 100 members.

107.     There are questions of law and/or fact common to the Class that predominate over any questions that affect only individual Class Members.  These questions include, but are not limited to, the following:

a.     Whether as a matter of law, a conveyance, reservation, or exception of coal does not include CBM;

b.     Whether as a matter of law, no CBM ownership conflict exists as between a person owning gas estate interests in a CBM unit tract and a different person owning coal estate interests and not gas estate interests in the tract.

c.      Whether as between (a) a person(s) owning gas estate interests in a CBM unit tract, and (b) a different person(s) owning coal estate interests and not gas estate interests in the CBM unit tract, the CBM produced from the CBM unit tract is owned by the gas estate interest owner and not by the coal estate interest owner, as a matter of law

d.      Whether CNX has committed an actionable trespass upon Plaintiff's and the Class Members' lands and/or gas interests;

e.      Whether CNX has converted Plaintiff's and the Class Members' CBM and/or revenues attributable thereto;

f.      Whether CNX has failed to account and/or properly account to Plaintiff and the Class Members for CBM and/or revenues attributable thereto;

g.      Whether the gas prices used by CNX in calculating the CBM proceeds that are attributable to Plaintiff's and the Class Members' interests, were less than the best gas prices obtainable for such CBM;

h.      Whether the gas prices and proceeds CNX realized/received through its hedging and marketing activities should have been included within CNX's proceeds for royalty calculation purposes;

i.      Whether the gas volumes used by CNX in calculating the proceeds that are attributable to Plaintiff's and the Class Members' interests, were less than the gas volumes produced and/or sold by CNX;

j.      Whether the costs deducted by CNX in calculating the proceeds that are attributable to Plaintiff's and the Class Members' interests, were improper and/or excessive;

k.      Whether CNX's deduction of severance or license taxes from the deemed lease royalties was wrongful;

l.      Whether the Gas Act makes the existence of deemed leases created by CBM ownership conflicts under §45.1-361.22(6) subject to final legal determinations of CBM ownership;

m.      Whether CNX should prospectively account to Plaintiff and the Class Members as unleased mineral owners;

n.      Whether the "deemed lease" provisions of the Gas Act and/or the "deemed lease" provisions of the Board's pooling orders -- as interpreted and applied by CNX -- are an unconstitutional taking for private purposes;

o.      Whether the "deemed lease" royalty provisions ("1/8th net proceeds" royalty rate and $1.00 per acre and $5.00 per acre "cash bonuses"), as sought by CNX to be imposed on Plaintiff and the Class Members, are unconstitutional;

p.      Whether CNX has violated its duty to properly account to Plaintiff and the Class Members on CBM produced in the Subject Virginia Counties as a result of the acts and omissions described herein; and

q.      Whether punitive damages can and should be imposed on CNX by virtue of CNX's wrongful acts and omissions.

These questions are capable of class wide resolution, and answering them will resolve issues central to the validity of the claims.

108.    CNX has acted on grounds that apply generally to Plaintiff and all Class Members, so that declaratory and injunctive relief is necessary and appropriate for the Class as a whole, consistent with Rule 23(b)(2) of the Federal Rules of Civil Procedure.

109.    The critical remedy that Plaintiff seeks is primarily declaratory and injunctive. The monetary relief that Plaintiff seeks is secondary to, and flows from, the declaratory/ injunctive request.

110.    The common pattern of conduct by CNX (along with the common theories for redressing the misconduct) support the maintenance of this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

111.    Plaintiff and the Class Members share a well-defined community of interest; many questions of law and fact are common to Plaintiff and all Class Members.

112.    Plaintiff's claims are typical of the claims of the Class, and Plaintiff has the same interests as the other members of the Class.

113.    Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

114.    Plaintiff is committed to prosecuting this action and has retained experienced and competent counsel.  Plaintiff's counsel are experienced in class actions, including actions that involve breaches of oil and gas leases, and underpayments of gas royalties.  Neither Plaintiff nor Plaintiff's counsel have any interests that might cause them not to vigorously pursue this action.

115.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, many members of the Class will find the litigation costs regarding their claims so prohibitive that they effectively would be unable to seek any redress at law.  Because of the size of the individual Class Members' claims, many could not afford to seek legal redress or the relief requested for the wrongs set forth herein.  Absent a class action, Defendant will continue the improper and wrongful conduct herein described, the Class

Members will continue to be damaged by the Defendant's wrongful conduct, and the Defendant's violations of the law will continue without remedy.

## COUNT I

## DECLARATORY JUDGMENT

116. Plaintiff restates and incorporates herein by reference all of the allegations contained in the above numbered paragraphs.

117. Plaintiff requests that the Court issue a judgment pursuant to 28 U.S.C. §2201, and declare and direct that that:

a. Because a conveyance, reservation, or exception of coal does not include CBM as a matter of law, no CBM ownership conflict exists as a matter of law as between (i) a person owning gas estate interests in a CBM Unit tract, and (ii) a different person owning coal estate interests and not gas estate interests in the CBM Unit tract;

b. Because a conveyance, reservation, or exception of coal does not include CBM as a matter of law, Plaintiff and the Class Members are entitled to receive the CBM proceeds that are attributable/allocated to those CBM Unit tracts as to which CNX has determined that Plaintiff and the Class Members are gas estate interest owners, but as to which CNX has further asserted that there are conflicting claims of CBM ownership between Plaintiff and the Class Members (as gas estate interest owners/lessors) on the one hand, and persons identified by CNX as owning coal estate interests and not gas estate interests on the other hand;

c. All CBM proceeds in the Board's escrow account that are attributable to Plaintiff's and the Class Members' respective CBM interests and that have been deposited into the escrow account due to alleged conflicting claims of CBM ownership with persons identified by CNX as owning coal estate interests and not gas interests, must be released from the Board's escrow account and paid over to Plaintiff and the Class Members;

d. All CBM proceeds attributable to Plaintiff's and the Class Members' CBM interests that were not deposited by CNX into the Board's escrow account but have been held by

CNX and not paid to Plaintiff and the Class Members due to alleged conflicting claims of CBM ownership with persons identified by CNX as owning coal estate interests and not gas interests, must be paid by CNX to Plaintiff and the Class Members;

e.      CNX, as the CBM Unit operator, must account to Plaintiff and the Class Members as unleased mineral owners, e.g., on an eight-eighths (8/8ths) basis, net of operational expenses, and do so as to both past production and future production;

f.      CNX must account for the methodology it used to calculate the escrowed proceeds, must prove that it sold the CBM at the highest price obtainable and otherwise calculated the proceeds (8/8ths, net of operational expenses) properly, and must pay over to Plaintiff and the Class Members any proceeds CNX calculated improperly or failed to deposit into escrow; and

g.      If the "deemed lease" provisions of the Gas Act are not interpreted as written but are instead interpreted to confine and limit Plaintiff's and the Class Members' rights and remedies to the recovery of past and/or future proceeds based only on a 1/8th net proceeds "deemed lease" royalty interest, then those statutory provisions, as so interpreted and applied, must be held to be an unconstitutional taking and transfer of Plaintiff's and the Class Members' valuable CBM rights, interests and properties to CNX, for private purposes, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 11 of the Virginia Constitution; or alternatively, the deemed lease royalty provisions ("1/8th net proceeds" royalty rate and paltry cash bonuses of $1.00 per acre and $5.00 per acre) established by the Gas Act and/or by the provisions of CBM Unit pooling orders issued by the Board, constitute an unconstitutional taking without adequate or just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and in violation of Article I, Section 11 of the Virginia Constitution; and -- in either event -- the deemed leases CNX seeks to impose must be declared void and unenforceable and CNX must account to Plaintiff and the Class Members as unleased mineral owners and must disgorge and pay over to Plaintiff and the Class Members an amount of money equal to eight-eighths (8/8ths) of the value of all CBM attributable to Plaintiff's and the Class

Members' interests that has been (or will be) produced and sold by CNX, together with interest thereon and any monetary or economic benefits, advantages or profits derived therefrom by CNX.

## COUNT II

## TRESPASS

118.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

119.     Trespass is the unauthorized use of or entry onto another's property.  CNX, as the Board-appointed operator of the CBM Units, had the lawful authority to produce the CBM that was attributable to Plaintiff's and the Class Members' interests.  However, once the CBM was produced, CNX was obligated to deliver the CBM to the rightful owners.

120.     CNX exercised wrongful dominion and control over the CBM that was attributable to Plaintiff's and the Class Members' interests and deprived Plaintiff and the Class Members of such CBM and/or production revenues by claiming that the coal estate owners own the CBM as a result of their coal ownership interests.

121.     CNX took possession of and sold CBM that was owned by and attributable to the interests of Plaintiff and the Class Members, and did so without receiving lawful authorization or permission from Plaintiff and the Class Members.

122.     Such actions by CNX constitute actionable trespass upon Plaintiff's and the Class Members' lands and/or gas ownership interests.  Such actions constitute willful, bad faith trespass as to, *inter alia*, such actions taken by CNX after March 5, 2004, when the Virginia Supreme Court issued its decision in *Ratliff*.

123.     Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable or other

prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT III

## CONVERSION

124. Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

125. CNX, as the Board-appointed operator of the CBM Units, had the lawful authority subsequent to pooling to produce the CBM that was attributable to Plaintiff's and the Class Members' interests. However, once the CBM was produced, CNX was obligated to either deliver all of the CBM in kind to Plaintiff and the Class Members or properly sell the CBM on Plaintiff's and the Class Members' behalf and remit the proceeds for same to Plaintiff and the Class Members. CNX failed to do this, and instead took wrongful possession of, sold and used the CBM for its own account, and received and retained the resulting sales proceeds for its own account, use, and benefit.

126. In those instances where CNX produced CBM wells prior to pooling, CNX did not have the lawful authority to produce CBM from the well. Nevertheless, CNX took wrongful possession of, sold and used the CBM for its own account.

127. CNX's conduct constitutes an unlawful conversion of the CBM production that is attributable to the Plaintiff's and Class Members' ownership interests and/or sales proceeds derived from the sale of such CBM production. Plaintiff and the Class Members are entitled to receive from CNX an amount of money equal to the gross revenues received by CNX from the sale of Plaintiff's and Class Members' CBM production, or the fair market value of such CBM production, whichever is greater.

128. Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT IV

## NEGLIGENCE: VOLUNTARY UNDERTAKING

129. Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

130. CNX voluntarily undertook to submit applications to the Board for the creation of CBM Units and thereby also voluntarily undertook the tasks of identifying the persons and entities owning an interest in the proposed units and identifying any conflicting CBM ownership claims therein. CNX recognized, or should have recognized, that the proper identification of owners and ownership interests was necessary for the protection of those persons and entities actually owning interests in the CBM that was going to be produced from the CBM Unit. As a matter of law, CNX's undertaking imposed upon CNX a duty to exercise reasonable care in the discharge of its undertaking.

131. On March 5, 2004, the Virginia Supreme Court issued its ruling in *Ratliff* and thereby established that, as between the owner of the gas estate/gas interests, on the one hand, and the owner of the coal estate/coal interests, on the other hand, CBM is owned by the owner of the gas estate/gas interests. After March 5, 2004, and notwithstanding the Supreme Court's decision in *Ratliff*, CNX continued to make applications to the Board for the establishment of CBM Units and in connection therewith failed to exercise reasonable care with regard to its identification of the persons and entities owning interests in the CBM.

132.     Among other things, CNX improperly ignored the holding of *Ratliff*; improperly asserted that conflicting CBM ownership claims existed between gas owners and coal owners; improperly procured the Board's entry of pooling orders which adopted (false) assertions of conflicting CBM ownership claims as between gas owners and coal owners; and improperly caused CBM sales proceeds owed to the true CBM owners -- the gas owners -- to be subjected to escrow, thereby depriving Plaintiff and the Class Members of the CBM production and/or production proceeds to which they were entitled.  Further, after the Virginia Supreme Court's March 5, 2004, opinion in *Ratliff*, CNX, as the operator of CBM Units established prior to March 5, 2004, should have filed, but failed to file, supplemental and corrected ownership schedules with the Board in regard to those CBM Units that had been established prior to March 5, 2004. CNX should have withdrawn its prior ownership schedules in which gas owners and coal owners had been categorized incorrectly as "conflicting claimants," and should have submitted amended schedules reflecting, consistent with *Ratliff*, that the gas owners --not the coal owners -- were the true CBM owners. CNX should have also taken the foregoing actions after the Virginia General Assembly's enactment of §45.1-361.21:1 on April 13, 2010. CNX could and should have thereby caused escrowed proceeds attributable to past production to be released to the gas owners, including Plaintiff and the Class Members, and/or caused proceeds attributable to future production to be paid to the gas owners, including Plaintiff and the Class Members, instead of being placed into escrow.

133.     Such acts and omissions constitute a failure by CNX to exercise reasonable care in the performance of its undertaking, and constitute actionable negligence. Further, CNX's acts and omissions in this regard constitute gross negligence and willful, wanton misconduct.

134.     Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT V

## NEGLIGENCE: DUTIES AS UNIT OPERATOR

135.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

136.     CNX owed Plaintiff and the Class Members certain obligations resulting from duties that are implied and imposed by law on the operators of force-pooled units, including the duty to act as a reasonably prudent operator and the duty to market.

137.     The above-described conduct by CNX constitutes violations and breaches of CNX's duty to act as a reasonably prudent operator and CNX's duty to market.

138.     Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT VI

## BREACH OF FIDUCIARY DUTIES

139.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

140.     Fiduciary duties and responsibilities were owed by CNX to Plaintiff and the Class Members by virtue of (a) CNX's status as the Board-appointed operator of CBM Units created through compulsory/forced pooling; (b) CNX's control over and handling, as unit operator, of

CBM production and sales proceeds for the benefit of persons owning interests in the CBM Units operated by CNX, including Plaintiff and the Class Members; and/or (c) CNX's undertakings to act as agent and/or joint venturer for, or for the benefit of, other interest owners in the CBM Units operated by CNX, including Plaintiff and the Class Members, in regard to the production, marketing and sale of CBM produced from the CBM Units and in regard to the accounting and revenue distribution functions related thereto. By virtue of such fiduciary duties and responsibilities, CNX had an affirmative duty to correctly identify the interest owners in the CBM Unit; calculate and pay the true and correct amount of monies due to the interest owners, including Plaintiff and the Class Members; account for all of the CBM produced and sold by CNX; and fully and accurately report and disclose all material information relating to CNX's calculation of its payments.

141.     CNX's acts and omissions as above-described constitute violations and breaches of the fiduciary duties owed by CNX to Plaintiff and the Class Members.

142.     Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT VII

## UNJUST ENRICHMENT

143.     Plaintiff restates and incorporates herein by reference all the allegations contained in the above-numbered paragraphs.

144.     Benefits attributable to Plaintiff's and the Class Members' CBM ownership interests, including CBM production volumes, sales proceeds, attendant tax credits, and other benefits, were conferred on CNX by Plaintiff and the Class Members. CNX knew of such

benefits and should reasonably have expected to repay Plaintiff and the Class Members for same. CNX accepted and retained such benefits without paying Plaintiff and the Class Members for the value of the benefits, and accepted and retained such benefits under circumstances that render it inequitable for CNX to retain the benefits without paying Plaintiff and the Class Members for the value of same.

145.     Plaintiff and the Class Members are entitled to recover the value of the benefits attributable to Plaintiff's and the Class Members' ownership interests that were accepted and retained by CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands as follows on behalf of himself and the Class:

1.     That a class be certified by the Court as soon as practicable, and that this action proceed as a class action with Plaintiff serving as Class Representative for the Class and with counsel for Plaintiff serving as Class Counsel;

2.     That the Court enter a judgment declaring the respective rights and obligations of the parties as described and requested above;

3.     That the Court award injunctive relief requiring CNX to properly account to Plaintiff and the Class Members as described and requested above;

4.     That Plaintiff and the members of the Class recover full compensatory damages from CNX in respect to the claims asserted against it, and that CNX disgorge and pay over to Plaintiff and the members of the Class all of CNX's ill-gotten gains as described and requested above;

5.      That Plaintiff and the members of the Class recover punitive damages against CNX as determined by a jury;

6.      That Plaintiff and the Class Members recover pre-judgment, post-judgment, and equitable interest on all amounts awarded hereunder;

7.      That Plaintiff and the Class Members recover reasonable attorneys' fees and costs of this action;

8.      That this Honorable Court grant Plaintiff and the Class Members all additional relief as may be just and proper and to which the Plaintiff and the members of the Class may be entitled; and

9.      That Plaintiff and the Class Members be given a trial by jury.

Dated: June 15, 2012                    Respectfully submitted,

                                        JEFFERY CARLOS HALE, PLAINTIFF


                                        /s/ *Don Barrett*
                                        Don Barrett
                                        David M. McMullan, Jr.
                                        Brian Herrington
                                        Katherine B. Riley
                                        Barrett Law Group, P.A.
                                        404 Court Square North
                                        P.O. Drawer 927
                                        Lexington, MS  39095
                                        Telephone:  (662) 834-2488
                                        Facsimile:  (662) 834-2628
                                        dbarrett@barrettlawgroup.com
                                        dmcmullan@barrettlawgroup.com
                                        bherrington@barrettlawgroup.com
                                        kbriley@barrettlawgroup.com

Larry D. Moffett
Daniel Coker Horton  & Bell, P.A.
265 North Lamar Blvd., Suite R
P. O. Box 1396
Oxford, MS 38655
Telephone: (662) 232-8979
Facsimile:  (662) 232-8940
lmoffett@danielcoker.com

David S. Stellings
Steven E. Fineman
Daniel E. Seltz
Lieff Cabraser Heimann  & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592
dstellings@lchb.com
sfineman@lchb.com
dseltz@lchb.com

Elizabeth Alexander
Lieff Cabraser Heimann
 & Bernstein, LLP
One Nashville Place
150 Fourth Avenue North
Suite 1650
Nashville, TN 37219
Telephone:  (615) 313-9000
Facsimile: (615) 313-9965
ealexander@lchb.com

Elizabeth J. Cabraser
Lieff Cabraser Heimann  & Bernstein, LLP
275 Battery Street
San Francisco, CA 94111
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008
ecabraser@lchb.com

Peter G. Glubiak (VSB 31271)
Glubiak Law Office
19840 King William Rd
King William, VA 23086
P.O. Box 144
Aylett, VA  23009
Telephone:  (804) 769-1616
Facsimile:   (804) 769-1897
glubiaklaw@aol.com

Jackson S. White, Jr. (VSB 03677)
The White Law Office
P. O. Box 286
Abingdon, VA 24212
Telephone: (276) 619-3831
Facsimile:  (866) 516-5655
jackwhite@whitelawoffice.com

Richard R. Barrett
Law Offices Of Richard R. Barrett, PLLC
1223 Jackson Avenue, Suite 203
Oxford, MS 38655
Telephone: (662) 307-7000
rrb@rrblawfirm.net

Charles F. Barrett
6518 Highway 100, Suite 210
Nashville TN 37205
Telephone: (615) 515-3393
Facsimile: (615) 515-3395
charles@cfbfirm.com

Jennifer L. Shaver (VSB 79047)
Ellis Professional Building, Suite A
211 West Main Street
Abingdon, VA 24210
Telephone: (276) 525-1103
Facsimile: (276) 525-1112
jshaver@bvunet.net

<u>CERTIFICATE OF SERVICE</u>

     The undersigned counsel does hereby certify that he has this day served a true and correct copy of the above and foregoing upon all counsel of record via ECF notification.

     This the 15th day of June, 2012.

                          /s/ *Don Barrett*
                          Don Barrett